## F. C. AUSTIN MFG. CO. v. JOHNSON.

(Circuit Court of Appeals, Eighth Circuit. October 3, 1898.)

No. 1,021.

1. PROCEEDINGS IN ERROR—QUESTIONS PRESENTED FOR REVIEW—BILLS OF EXCEPTIONS.

Where motions are heard in the trial court, presenting issues of fact and submitted on evidence in any form, the ruling thereon cannot be reviewed, unless a proper bill of exceptions is duly taken and filed. A reference to the evidence in the journal entry does not make such evidence a part of the record.

2. MASTER AND SERVANT — INJURY TO SERVANT — FELLOW SERVANTS — VICE PRINCIPAL.

Where a corporation engaged in the construction and erection of steel bridges, having a contract for the erection of a bridge in another state, sent an employé to erect and settle for the same, and to employ the necessary workmen to assist, without instructions as to the work, but relying on his knowledge of the business, such employé was a general agent, representing the company in the work, and for whose failure to provide a reasonably safe place for workmen employed by him to work it was responsible. Sanborn, Circuit Judge, dissenting.[1]

3. SAME—RESPONSIBILITY FOR SAFETY OF SCAFFOLD.

Where, in such case, a scaffold became necessary, not only for the workmen, but to sustain the superstructure of the bridge while it was being put together, and such scaffold was built under the direction of the company's agent, the workmen building it having no control over its construction, the company was responsible to such workmen for the exercise of due care to insure its stability and safety as a place on which to work, and for all purposes for which it was necessary to use it in the prosecution of the work. Sanborn, Circuit Judge, dissenting.

4. SAME—MEASURE OF MASTER'S DUTY.

The master is under legal obligation in the erection of a scaffold upon which his servants are to work, and necessary also for other purposes in the prosecution of their work, to use ordinary care, having due regard to the uses to which it is to be put.

5. SAME—ORDINARY CARE BY CORPORATION.

Ordinary care on the part of a corporation is the exercise of such watchfulness, caution, and foresight as, under all the circumstances of the particular situation, a corporation controlled by careful and prudent officers or agents ought to exercise.

6. SAME—ACTION FOR PERSONAL INJURY—INSTRUCTIONS.

In an action by a servant against his master, a corporation, to recover for personal injuries resulting from the falling of a scaffold on which the servant was at work, an instruction stating, in effect, that if the company failed to furnish a scaffold constructed in a reasonably safe and proper manner the plaintiff was entitled to recover is misleading, where the legal obligation of the defendant, which was to use ordinary care in the erection of the scaffold, is nowhere stated or defined.

In Error to the Circuit Court of the United States for the District of Kansas.

This was an action by Charles Johnson against F. C. Austin Manufacturing Company to recover for personal injuries sustained by plaintiff while in the employ of defendant. There was a verdict and a

[1] As to who are fellow servants generally, see note to Railroad Co. v. Smith, 8 C. C. A. 668, and supplementary notes to Railway Co. v. Johnston, 9 C. C. A. 596, and to Flippin v. Kimball, 31 C. C. A. 282.

judgment for plaintiff in the circuit court, and the defendant brings error.

Mart B. Koon (D. S. Alford and W. Littlefield, on brief), for plaintiff in error.

Louis C.-Poehler (George J. Barker, on brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and SHIRAS, District Judge.

SHIRAS, District Judge.    The plaintiff in error, the F. C. Austin Manufacturing Company, is a corporation created under the laws of the state of Illinois, and is engaged in the manufacture of various kinds of machinery and in the construction and erection of steel bridges.    In December, 1895, the company entered into an agreement with the commissioners of Douglas county, Kan., for the erection of a steel bridge over Toy creek, in the named county, of about 50 feet in length and weighing some 6,000 pounds, one Charles Killifer being in charge of the work on behalf of the company.    In order to put the girders and floor beams in place, it was necessary to erect a scaffolding to give support to the beams while they were being placed in position and bolted together, and also to furnish a place whereon the workmen could stand, when engaged in putting together the framework of the superstructure.    The evidence on behalf of the plaintiff in error tends to show that the defendant in error, who was a farmer living in the neighborhood, but who had been employed as a laborer to aid in the erection of the bridge in question, assisted in the preparation of the poles or posts that were used in the construction of the scaffolding and in the general work of building the same, the same being done under the direction of Mr. Killifer, but this is denied by the defendant in error, who testified that he had nothing to do with the erection of the scaffolding, and was not present on the day of its erection, the main part of the work being done on Friday, December 20th.    The evidence further shows that on Saturday, a part of the iron framework of the bridge was placed upon the scaffolding, and thus remained during Sunday, and that, when the work of construction was resumed on Monday, it was found that the weight of the same had caused the scaffolding to sink somewhat, so that it became necessary to raise up the ends of the floor beams already placed in position, and, while this was being done, the scaffolding fell down, carrying with it the portions of the superstructure resting thereon, and a number of workmen who were standing on the scaffolding, including the defendant in error, who was badly injured.    To recover for the damages thus caused him, Johnson brought the present action in the district court of Douglas county, Kan., the same being aided by a writ of attachment issued against the defendant as a nonresident corporation, and levied on property belonging to the company.    The service on the summons issued in the case to the sheriff of Douglas county was returned as follows:

"Received this writ Jan. 22, 1896, and, as commanded therein, I summoned the said defendant, within named, as follows, to wit, by handing on Jan. 23rd, 1896, to C. M. Avery, the managing agent and chief clerk of said defendant, a true copy of this writ, with all the indorsements thereon; the

president, chairman of board of directors, or chief officer not being found in said county. J. C. Moore, Sheriff."

Thereupon the defendant company, appearing specially for that purpose, moved the court to set aside and vacate the service thus made, on the ground that the named C. M. Avery was not a managing agent in Kansas or elsewhere of the defendant company, nor was he one upon whom valid service could be made as a representative of the corporation. Upon a hearing this motion was overruled, and thereupon the defendant company removed the case into the United States circuit court, on the ground that it was a nonresident of Kansas, being an Illinois corporation; and in the federal court, after filing an answer to the merits, the defendant company moved the court for a rehearing upon the motion to set aside and vacate the service, which motion was overruled, and at the June term, 1897, the case was heard before the court and jury, and a verdict was rendered in favor of the plaintiff, Johnson, and, judgment being entered thereon, the case is now before this court upon a writ of error.

The first question presented for consideration in the brief of counsel for plaintiff in error arises upon the action of the state court in overruling the motion to vacate the service of the summons, it being urged that the state court erred in holding that C. M. Avery was a managing agent of the corporation in such sense that valid service of the summons could be made upon him, under the provisions of the statutes of Kansas, which enact that "where the defendant is a foreign corporation having a managing agent in this state, the service may be upon such agent."

As already stated, the sheriff's return recited that Avery was the managing agent of the defendant corporation, and the service on him was valid, provided he was in fact a managing agent of the company. The question of the relation existing between the corporation and C. M. Avery, at the time the service was made upon him, is clearly a question of fact, to be determined according to the evidence submitted thereon; and this court cannot review the finding of the court below on this question of fact, unless all the evidence introduced is before us by means of a bill of exceptions. It does not appear in the record that any bill of exceptions was taken for the purpose of presenting the evidence submitted on this issue of fact, and therefore the finding and ruling of the court below on this fact issue is not before us for review. There is to be found in the transcript the entry made in the journal of the ruling of the court upon the motion to vacate the service, but this journal entry cannot be treated as a bill of exceptions, nor does this entry make part of the record the evidence to which it refers, so as to bring it before this court for consideration. When motions are heard in the trial court, presenting issues of fact and submitted on evidence in any form, a review of the action of the trial court thereon cannot be had unless a proper bill of exceptions is duly taken and filed, for this is the only proper mode in which the evidence can be made a part of the record. State v. Hemrick, 62 Iowa, 414, 17 N. W. 594; Stewart v. Ranch Co., 128 U. S. 383, 9 Sup. Ct. 101; Evans v. Stettnisch, 149 U. S. 605, 13 Sup. Ct. 931; Dietz v. Lymer, 10 C. C. A. 71, 61 Fed. 792, and 19 U. S. App. 667.

Coming now to the error assigned upon the rulings of the court in the trial of the case before the jury, the larger part thereof can be considered under the exception taken to that part of the charge of the court wherein it was said:

"When the plaintiff entered the service of the defendant company as a laborer on this work, he assumed the usual and ordinary risk attending such labor, and if the injury is chargeable to such ordinary risk, assumed by the plaintiff himself, then he cannot recover. On the other hand, it was the duty of the defendant company and its general agent, Charles Killifer, in charge of the work, to have provided a scaffold for the laborers to work upon, constructed in a reasonably safe and proper manner, so that they would not be exposed to unnecessary risk while at work. But if the company or its general agent, Killifer, failed to do so, and by reason of the faulty construction of the scaffolding, and without fault on the plaintiff's part, the scaffold fell, and the plaintiff received injuries, he is entitled to a verdict at your hands."

It is excepted to this charge .that Charles Killifer was in fact but a co-servant with Johnson, the defendant in error, for whose negligence the company would not be responsible. The evidence shows that the F. C. Austin Manufacturing Company was engaged in the manufacture and sale of several varieties of machinery, and, in addition thereto, was engaged in the construction and erection of steel bridges, and F. C. Austin testified that he was the president of the corporation; that:

"I am acquainted with Charles Killifer. He has been in our employ, off and on, for several years,—perhaps five. He was a salesman, an expert, erected bridges, trusses. Much of the time he was in Michigan, although his territory was not limited as to that. We sent him around to various places. For instance, if we had a bridge in the South, we would send him down there. This bridge out in Kansas, we sent him out there. In Michigan he put up quite a number of bridges. I think he worked probably more in Michigan than anywhere else. I don't know that any different instructions were given with reference to the erection of the bridge, excepting we had this contract, and sent him there to erect and settle for it. He was supposed to be competent in those matters without any instructions from the office,—any general instructions."

The evidence shows, without contradiction, that the entire control of the work of erecting the bridge was intrusted to Killifer, and therefore the court might well speak of him as "a general agent in charge of the work." The court held that it was the duty of the company to have a scaffold for the laborers to work on, constructed in a reasonably safe manner, and that it was the duty of Killifer, as the general agent of the company in charge of the work, to see to it that a safe scaffold was furnished for the use of the men employed in erecting the bridge. If the duty was imposed upon the company to use due care in furnishing a safe scaffold for the use of the men, then it is clear that the performance of this duty was intrusted to Killifer, because he was placed in charge of the work as the representative of the company, and he did, in fact, supervise the erection of the scaffold. If the facts of the case are such that the court was justified in holding that it was the duty of the company to furnish a safe scaffold for the use of its servants, then it was not error to charge that the performance of this duty was intrusted to Killifer, and that, in effect, was all that the court meant in the in-

struction excepted to.　Thus we reach the principal question at issue in the case, to wit, whether, under the general rule of law that a master is under obligation to use due care in furnishing a safe place and appliances to his workmen, when engaged in the master's business, it was the duty of the corporation, defendant herein, to use due care in the erection of the scaffold by the fall of which the plaintiff, Johnson, was injured.　Was the scaffold in question a place furnished by the company to be occupied by its servants when they undertook to erect the bridge?　Was the scaffold an appliance necessary to be used in getting the different parts of the bridge into position?

On part of the company it is claimed that the scaffold was of such a character that it comes within the exception to the general rule, which relieves the master from liability for stagings or scaffoldings erected by laborers who are to work thereon, and wherein it is held that the master's duty is performed if suitable materials are furnished for the erection of the scaffold.　This exception originated in cases wherein a servant, such as a bricklayer, mason, carpenter, or the like, undertakes the performance of some work, like the erection of a wall, shingling a roof, or painting a house, which of necessity requires the construction of a scaffold or staging upon which the workmen may stand, when engaged at work, and wherein it is customary for the master to furnish the materials, and the mechanics to actually construct therefrom the staging necessary for the work. In this class of cases, the workmen will know the extent of the burden to which the staging will be subjected, and they are at liberty to make the same as strong as they deem necessary.　The method of the construction of the scaffold is under their control, and they have the necessary knowledge of the strain it will be subjected to when in use to enable them, by the use of due care on their own part, to safely construct the same; and under such circumstances, if the scaffold proves to be insufficient, it will be due to the lack of proper care on part of the workmen, assuming that the master has exercised due care in furnishing safe materials for the construction of the staging.　In such cases the master is relieved from responsibility, not because the place where the workmen are employed is a scaffold simply, but because the master did not in fact undertake to furnish the scaffold for the use of the workmen when in his employ.　The liability of the master cannot be determined simply by showing that the place where the workmen were engaged in his service was a scaffold, but it must depend upon the nature of the scaffold, the purposes it is to subserve; whether it could be properly left to the workmen to determine and control the method of its erection; whether they did in fact control its erection, or whether the master had charge thereof.

In the case at bar the scaffold was intended, not only as a place whereon the workmen were to stand, but as a support upon which was to be placed the entire superstructure of the bridge during the course of its erection.　If it should fall, through faulty construction, it might cause the entire or partial destruction of the steel work furnished by the company, and the company would be compelled to make good all damages thus caused.　It is clear that such workmen as the defendant in error could not be expected to know the strain

that would be placed upon this scaffold, in the erection of the steel superstructure. It is equally clear that it would not have been open to the defendant in error to exercise any control over the method in which the scaffold was erected, or the material used in its construction. The purpose for which this scaffold was to be used renders inapplicable the reasons upon which the rule is based, that ordinarily the master is not responsible for the safety of stagings which the workmen put up as aids in carrying out the particular work they are employed to perform. The use to which it was intended to subject this structure, in that there would be placed thereon, not only the dead weight of the material composing the bridge, but also the strain caused by placing the different parts in proper position, clearly shows that the erection of the staging was not a matter that could be safely left to the control of ordinary laborers, but required skilled control by persons who, from experience, would know what strain would be placed on the staging; and the evidence shows that in its erection the defendant in error exercised no control or judgment, but, on the contrary, it was erected solely under the direction of Charles Killifer, who, as a skilled expert, had been sent out by the company to erect the bridge and settle for it with the county authorities.

Furthermore, it clearly appears that the scaffold, as constructed, was in the nature of an appliance furnished to the workmen to enable them to put in place the steel superstructure. The floor beams, side braces, trusses, and other parts of the bridge proper were carried out on the scaffold, put in place, and bolted together thereon.

When the bridge fell, the workmen, under the direction of Killifer, were engaged in raising up one of the floor beams so it could be properly bolted, and to do this were using poles, which, being placed over a block upon one of the posts of the scaffold, operated as a lever in raising the floor beams. Thus the scaffold was being used to support the dead weight of the material placed on it, and also to aid in moving the beams into place, with all the additional strain caused thereby. If a derrick had been used to swing the beams into position while they were being bolted together, there could be no question that it would be an appliance, within the rule that requires of the master due care to supply proper machinery and appliances for the performance of the work in hand. The staging in this case served the same purpose, and therefore it can be fairly said that it was an appliance furnished by the master, to be used in getting the several parts of the superstructure into position and in bolting them together. In view of the purposes to which this scaffold was to be put, and of the fact that the workmen had no control over the mode of its erection, the trial court rightly held that the defendant company would be responsible to the plaintiff, Johnson, for negligence in its construction. Railway Co. v. Jarvi, 3 C. C. A. 433, 53 Fed. 65; Railroad Co. v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590; Woods v. Lindvall, 1 C. C. A. 37, 48 Fed. 62, 73, and 4 U. S. App. 49, 61.

The exceptions to the charge of the court present the further question whether the degree of care required of the company in the erection of the scaffold was correctly stated to the jury. The court

instructed the jury that "it was the duty of the defendant company and its general agent, Charles Killifer, in charge of the work, to have provided a scaffold for the laborers to work upon, constructed in a reasonably safe and proper manner, so that they would not be exposed to unnecessary risk while at work. But if the company, or its general agent, Killifer, failed to do so, and by reason of the faulty construction of the scaffolding, and without fault on the plaintiff's part, the scaffold fell, and the plaintiff received injuries, he is entitled to a verdict at your hands." In this instruction it was said that it was the duty of the defendant company to provide a scaffold for the laborers to work on, constructed in a reasonably safe and proper manner, so that they would not be exposed to unnecessary risk while at work, and that if it (the company) failed to do so, and the scaffold fell, plaintiff was entitled to a verdict; which, in effect, was saying that, if the company failed to furnish a scaffold constructed in a reasonably safe and proper manner, plaintiff was entitled to a verdict. The question is not what construction a court, having knowledge of the law, may be able to put upon the language of a charge, but how would the jury naturally understand the same, when applied to the facts of the case before them. The evidence showed that, when the staging was put to the use for which it was intended, it failed to stand the strain, and fell down, and the jury would naturally conclude therefrom that it had not been constructed in a reasonably safe and proper manner; and, this conclusion being reached, then, under the instruction of the court, it became the duty of the jury to find for the plaintiff.

In no part of the charge was it stated that the legal obligation resting upon the company was to use ordinary care in the erection of the scaffold, having due regard to the uses to which it was to be put, ordinary care being the exercise of such watchfulness, caution, and foresight as, under all the circumstances of the particular situation, a corporation controlled by careful and prudent officers or agents ought to exercise. Hough v. Railway Co., 100 U. S. 213; Railway Co. v. McDaniels, 107 U. S. 454, 2 Sup. Ct. 932. The nearest approach to a statement of the rule is found in a subsequent sentence, wherein it is said:

"While the defendant company, and its agent, Killifer, under the law, were required to furnish the plaintiff a safe scaffold to work upon, they were not insurers of the absolute safety of the structure, but they were bound to exercise every reasonable care in selecting the material and putting it up in a proper manner to avoid accident and injury to the plaintiff."

The jury would naturally construe this instruction to mean that, while the company was not an insurer of the absolute safety of the structure, it was bound to furnish a safe scaffold, and to exercise every reasonable care in selecting the material and in putting it up in a proper manner, so as to avoid accidents.

We have no question that the trial court had in mind the true rule applicable to the situation, but, unfortunately, the form in which the instructions were given would not convey the proper meaning to a jury composed of men unskilled in legal phraseology, and we are compelled to hold that, upon this important question of the legal

obligation resting upon the defendant company, the charge is inaccurately stated, is misleading, and therefore erroneous; and for this error the judgment must be reversed, and the case be remanded to the circuit court, with instructions to grant a new trial.

SANBORN, Circuit Judge (concurring). I concur in the result in this case, but am unable to yield assent to the views expressed in the opinion of the court respecting the relation of Killifer to the defendant in error, and relative to the duty of the plaintiff in error with reference to the false work or scaffolding for the bridge. The following is a brief statement of my conclusions:

The bridge could not be constructed without this false work. The entire undertaking, from the cutting of the posts in the woods, and the digging of the holes in the earth in which they were placed, to the completion of the steel bridge, and the removal of the materials of the scaffolding after it was done, was a single job, which the plaintiff in error hired Killifer, and, through him, those who worked with him, to perform. It was not a case in which the corporation undertook to furnish a structure upon which it hired the workmen to labor while placing the steel bridge, but one in which the servants were furnished with the steel necessary to make the bridge, and were hired to put it up. Here, it seems to me, is the true line of demarkation between the cases in which the duty is imposed upon the master to exercise reasonable care to furnish a reasonably safe structure for the servants to work upon and those in which that duty rests upon the workmen. If the master furnishes a complete structure, and then employs men to work upon it, the duty to care for the erection of that structure and the corresponding liability for its faults are generally with him. If he employs workmen to construct a bridge or a building, or to put a gutter, a cornice, or paint upon such a structure, and the workmen construct false work,—a scaffolding or staging,—to enable them to accomplish their undertaking, the duty of care in its construction generally rests upon them, and not upon their master, and he is not liable for its faults. The case at bar falls in the latter class of cases, and the extent of the master's duty was the exercise of reasonable care in the selection of competent servants to do the work. The suggestion, in the opinion of the majority, that because the materials of the bridge were heavy, and required a strong, substantial scaffold to support them, the master was liable for its construction, does not seem to present a practical test of the liability of the master and the servants, because there is no definite line of demarkation between heavy and light materials. These views seem to be supported by Fraser v. Lumber Co., 45 Minn. 235, 237, 47 N. W. 785; Marsh v. Herman, 47 Minn. 537, 539, 50 N. W. 611; Lindvall v. Woods, 41 Minn. 212, 215, 42 N. W. 1020; Ross v. Walker, 139 Pa. St. 42, 51, 21 Atl. 157, 159; Hoar v. Merritt, 62 Mich. 386, 29 N. W. 15; and Killea v. Faxon, 125 Mass. 485. In Fraser v. Lumber Co., the supreme court of Minnesota, in deciding this question, said:

"An important consideration, often overlooked, is whether the structure, appliance, or instrumentality is one which has been furnished for the work

in which the servants are to be engaged, or whether the furnishing and preparation of it is itself part of the work which they are employed to perform. If it be the latter, then, as is well settled by our own decisions, the master is not liable."

Respecting the relation of Killifer to the corporation and to the defendant in error, it is to be noticed that he was employed by the former at a salary of $75 per month to act as foreman of gangs of laborers who were hired by him to work for the corporation in constructing this and other bridges. Each bridge constituted a separate piece of work, upon which a separate set of workmen was employed. Killifer was not a superintendent of all the work of the corporation, or of any separate department of that work. In building this bridge and the false work required to support it, he worked with the men, and simply acted as their foreman. In this state of the case he was not, in my opinion, a vice principal, but a fellow servant of the men with whom he worked, for whose negligence in the construction of the false work his master was not liable, under the decisions in Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914; Minneapolis v. Lundin, 7 C. C. A. 344, 346, 348, 58 Fed. 525, 527, 529, and 19 U. S. App. 245, 250, 252; and Balch v. Haas, 20 C. C. A. 151, 73 Fed. 974, 979, and 36 U. S. App. 693. The reasons for these conclusions are succinctly stated in Minneapolis v. Lundin, and it would be useless to repeat them here.