## FARNEY v. OREGON SHORT LINE R. CO.

No. 1748.   Decided November 12, 1906 (87 Pac. 440).

1. MASTER AND SERVANT—INJURIES TO SERVANT—DEFECTIVE APPLI-
ANCE—NEGLIGENCE—QUESTION FOR JURY.—In an action for injuries
to a servant caused by the fall of a gallows frame used in moving
heavy bridge girders, evidence *held* to require submission of de-
fendant's negligence in the construction of the gallows to the jury.

2. SAME—ASSUMED RISK.—Where a gallows frame, by the fall of
which plaintiff was injured, was designed and constructed by de-
fendant railroad company, and transported from point to point on
its line, as required, and plaintiff, who had had no previous experi-
ence with such appliances, only assisted in setting up the gallows
under the direction of his foreman, he did not assume the risk of
defects in the design, plan or construction thereof.

APPEAL from District Court, Salt Lake County; M. L.
Ritchie, Judge.

Action by Herbert J. Farney against the Oregon Short
Line Railroad Company.   From a judgment for plaintiff, de-
fendant appeals.

AFFIRMED.

*P. L. Williams, J. S. Willis,* and *Geo. H. Smith* for appel-
lant.

*Powers & Marioneaux* for respondent.

RESPONDENT'S POINTS.

Grounds of motion for judgment of nonsuit must be specifi-
cally stated.   (*White v. Railroad,* 22 Utah 138; *Lewis v.
Mining Co.,* 22 Utah 51; *Frank v. Mining Co.,* 19 Utah 35;
*McIntyre v. Mining Co.,* 20 Utah 323; *Skeen v. Railroad,* 22
Utah 413; *Wild v. Railroad,* 23 Utah 265.)

"That there is no evidence to show negligence towards de-
ceased for which an action will lie against defendant in favor
of plaintiff or either of them."   Held too general, 22 Utah
13; 22 Utah 51; 19 Utah 35; 20 Utah 328.

"Fatal variance between the pleadings and the proof, and that the evidence fails to show any negligence or carelessness whatever on the part of the defendant company." Held too general to be considered. (*Lewis v. Mining Co.*, 22 Utah 51.)

Knowledge of the danger is necessary to show assumption of risk, and a servant is only bound to see patent and not latent defects. (*Farren v. Sellers*, 4 Am. St. Rep. 256.)

While a servant assumes the risk of injury from obvious defects or dangers, he does not assume the risk of injury from defects which are not obvious, and the danger of which he could not reasonably be expected to know. (*Appel v. Railroad*, 24 N. Y. St. Rep. 257; *Speed v. Railroad*, 71 Mo. 303; *Waldhur v. Railroad*, 87 Mo. 37.) The burden of proving that the plaintiff assumed the risk is upon the defendant. (*Leach v. Railroad*, 29 Utah 285; *Alexander v. Central L. & M. Co.*, 104 Cal. 532; 2 Am. and E. Ency. Law [2nd Ed.], p. 133 and cases cited.)

It is well settled that where a master furnishes a completed structure, such as a platform or scaffolding, or has it built under his direct personal supervision for the use of his employees in and about their work, he is bound to be ordinarily careful to make it reasonably safe for the purpose for which it is built; and for injuries to a servant from any defect or insufficiency in such structure which ordinary care would have avoided or made good, he is liable. (*Conner v. Fireproof Constr. Co.*, 29 Fed. 629; *Mfg. Co. v. Johnson* [C. C. A.], 89 Fed. 677; *McNamara v. MacDonough*, 102 Cal. 575; *Alexander v. Lumber Co.*, 104 Cal. 532; *Donovan v. Harlan, etc. Co.*, 2 Penn. [Del.] 190; *Railroad v. Maroney*, 170 Ill. 520, affirming 67 Ill. App. 618; *Bradbury v. Goodwin*, 108 Ind. 289; *Arkerson v. Dennison*, 117 Mass. 407; *Colton v. Richards*, 123 Mass. 484; *Bowen v. Railroad*, 95 Mo. 268; *Whalen v. Centenary Church*, 62 Mo. 326; *Sullivan v. Railroad*, 107 Mo. 66, 28 Am. St. Rep. 388; *Stevens v. Howe*, 28 Neb. 547; *Bryer v. Foerster*, 9 N. Y. App. Div. 542; *Manning v. Hogan*, 78 N. Y. 615; *Coughtry v. Globe Woolen Co.*, 56 N. Y. 124, 15 Am. Rep. 387; *Weiler v. Isley*, 6 N. Y.

595; *Rossman v. Ice Co.*, 23 N. Y. Wkly. Dig. 445; *Ernst v. Hoisting, etc., Co.*, 4 Misc. [N. Y.] 450; *Green v. Banta*, 48 N. Y. Sup. Ct. 156; *Selleck v. Langdon,* 55 Hun [N. Y.] 19; *Solarz v. Railroad* [N. Y. Sup. Ct.], 8 Misc. 656; *McLean v. Standard Oil Co.*, 66 Hun [N. Y.] 635, 21 N. Y. Supp. 874; *Boyle v. Constr. Co.*, 47 N. Y. App. Div. 311; *Davies v. Griffiith*, 27 Cinc. L. Bul. 180, 11 Ohio Dec. 495; *Cougle v. McKee*, 151 Pa. St. 602; *Behm v. Armour*, 58 Wis. 1; *Cadden v. Steel Barge Co.*, 88 Wis. 409; *Kaspari v. Marsh*, 74 Wis. 562.)

STATEMENT OF FACTS.

Plaintiff brought this action to recover for personal injuries alleged to have been caused him through the negligence of defendant. It appears from the record that at the time of the injuries for which this suit was brought, the defendant company was engaged in building a new steel bridge along the line of its railroad and across Ham's Fork, a small stream near Opal, Wyoming. Defendant was moving a wooden bridge, and replacing it with one of steel. The work had progressed to the point where it was necessary to move a heavy steel girder, weighing about 65,000 pounds. The machinery and appliances which had been provided and constructed for the purpose of doing the work in hand, consisted of an ordinary locomotive and cars and a hoisting engine set upon a flat car, and a gallows frame with fall lines, blocks and tackle. The locomotive and cars were used for the purpose of transporting the heavy part of the material to the place on the bridge where it was desired to be used. The steel girders were taken from the cars by means of blocks and tackle attached to the gallows frame, and operated by the hoisting engine. The principal part of the machinery and appliances in question in this case is the gallows frame which was constructed of materials furnished by defendant, and was under the direct supervision and control of defendant's foreman. This gallows frame, which was about ninety-five feet in length, was constructed as follows: Two uprights, known as

plumb posts, about 12x12 inches square and thirty-two feel long, which stood upright and rested on concrete abutments which had been constructed for the purpose of retaining the steel girders as their resting places. Needle beams were bolted at the top, and so constructed that the arms thereof extended some ten or twelve feet outward from the plumb posts. Wind braces were fastened at the outer ends of the needle beams, and down near the foot of the plumb posts, running at an angle of perhaps fifty degrees from the perpendicular. Across the bottom of the plumb posts were placed collar beams connecting them together. There were four uprights or plumb posts in the gallows frame; that is, a set consisting of two uprights at each end of the frame. On the morning of August 5, 1903, the steel girder which was about ninety-five feet long was taken off a flat car and placed on the bridge. This was done by attaching the tackle of the gallows frame to the girder, starting up the hoisting engine, and, while the girder was suspended, withdrawing the car from which it had been taken, and then lowering the girder until it rested on the bridge. Before the girder was unloaded from the car, Draper, defendant's foreman, had sent plaintiff upon the needle or cross-beams of the gallows frame, for the purpose of moving the lashings along the beams, so that the girder could be moved over to the north. Upon the girder being unloaded and set down on the bridge, the plaintiff and a companion on the same end of the scaffold, moved the lashings toward the north by the use of a hammer. Other workmen on the east scaffold performed the same operation upon the lashings there. The hoisting engine was then set in motion, the lines tightened up, and the girder moved slightly to the north. The lines were then permitted to slacken preparatory to the lashings being moved further north. Whereupon the foreman, Draper, gave directions to tighten up the lines by putting the hoisting engine in motion. This was immediately done. The plaintiff and his companion were at their places on the west end of the gallows frame, standing on the needle beam ready to receive orders. At this juncture the hoisting engine was put in motion, and the lines were drawn and tightened, and

the strain commenced. There was a cracking sound, and the gallows frame careened to the south. For an instant it paused and trembled, and then the whole structure fell over into the river, and the plaintiff was cast into eighteen or twenty feet of water. His right arm was broken, his left leg bruised, his hips injured, and his back hurt; and, as a result thereof, he was confined in the hospital for six months. Four or five operations were performed upon his arm, and nine or ten pieces of bone removed therefrom. His wrist has become stiff, his fingers can scarcely be bent, and the thumb has become rigid.

Plaintiff alleged in his complaint "that, notwithstanding said duty [as the same is alleged in the complaint], on the day and place aforesaid, while respondent was in the employ of defendant, and engaged in the erection of said bridge, under the direction of defendant, defendant carelessly and negligently failed to furnish plaintiff with a reasonably safe place and a reasonably safe gallows frame upon which to perform his work, and carelessly and negligently failed to use reasonable care in the construction of said gallows frame; and carelessly and negligently failed and omitted to so construct said gallows frame that the same was reasonably safe, so that when a certain steel girder was being moved and lifted by means of said gallows frame the same would sustain the weight of the girder and remain upright; and carelessly and negligently failed and omitted to stay and brace said gallows frame with guy ropes, or otherwise; and carelessly and negligently failed and omitted to brace and stiffen certain wind braces on said gallows frame, . . . and carelessly and negligently, in the moving of said steel girder, placed the tackle used in moving said steel girder so far to the north side of said gallows frame that there was an angle pull upon the same, rendering it thereby unsafe; and so carelessly and negligently constructed said gallows frame that when plaintiff [respondent], under defendant's [appellant's] direction, was engaged in and about the work of lifting and bracing said steel girder, the said gallows frame tipped and broke, by reason whereof said frame fell, throwing plaintiff with great force, thereby injur-

ing him in the back, loins and hip, and internally, and bruising and injuring his right leg, breaking his right arm so that the same became stiff and lame and caused him pain incident to several surgical operations, thereby incapacitating him from following his usual avocation, to his damage," etc. In addition to its general denial the defendant pleaded three defenses: (1) That the injuries received by plaintiff were the result of an accident caused by his own carelessness and negligence, or to which his own carelessness directly contributed; (2) that the injuries to plaintiff, if any, were caused by the acts of carelessness and negligence of a fellow servant of the plaintiff; and (3) that the injuries to plaintiff, if any, were suffered or received by him, were caused by an accident which was one of the usual and ordinary risks of his employment, and was a risk and hazard that was open and obvious and known to plaintiff, and was therefore assumed by him. A trial was had, which resulted in a verdict for plaintiff. To reverse the judgment entered on the verdict, defendant has appealed to this court.

CHIDESTER, District Judge, after stating the facts, delivered the opinion of the court.

The first assignment of error discussed by counsel for appellant is the one based on the alleged insufficiency of the evidence to justify the verdict; that is, if we correctly understand appellant's position, the evidence fails to show negligence on the part of defendant in failing to furnish plaintiff with a reasonably safe appliance with which to perform the work required of him by his employment. We do not deem it necessary to make an extended reference to the evidence introduced, respecting the mechanism of the gallows frame. It is sufficient to here state that there is abundant evidence in the record to support a finding by the jury that the gallows frame was negligently constructed in that it was insufficiently braced, and not supplied with the necessary guy ropes to hold the plumb posts in position when subjected to the heavy strain caused by raising and lowering the steel girder referred to in the foregoing statement of facts.

C. F. Burke, a witness for plaintiff, testified in part on this point as follows: "I have seen how they have been constructed [referring to gallows frames] but never constructed one myself. . . . They are constructed similar to the model you have there [referring to an exhibit—a model of the gallows frame in question] with the exception of some braces on it leading from the needle beam there across the plumb posts and connected with the wind braces. I never saw one that did not have those braces. I have seen some times where guys were put on—use a cable or set of blocks from the plumb post or dead men; something fastened to the ground to keep it from swaying from one way to the other. The effect that would be had if there were no braces except the wind braces would be to double up. The braces that I have described running from the wind braces to the plumb posts and to the needle cap are to stiffen it. It would not be stiff enough without those wind braces. It is liable to rack without any braces on it at all." Parry Burke, a witness for plaintiff, testified: "I have used gallows frames for putting girders or steel beams in place, and have taken part in the construction of gallows frames." After explaining how a gallows frame, like the one under consideration, should be braced in order to successfully stand the strain required of it in handling and putting in place a girder of the weight in question, the witness proceeded to explain the effect of the hoisting and placing in position of such a girder with a gallows frame constructed on the same plan as the one under consideration, and stated: "It would not be strong enough. It would rack sidewise. It would jack-knife it right over." Other witnesses testified to substantially the same facts respecting the alleged defective condition of the gallows frame caused by the lack of sufficient braces in its construction and the lack of guy ropes. In view of this testimony, when considered in connection with other facts herein stated and referred to, we think the question of negligence on the part of plaintiff was properly submitted to the jury.

Appellant next insists that while the gallows frame was constructed under the supervision and direction of defendant's

foreman, nevertheless the plaintiff, assisting in the work and thereby becoming conversant with its condition, assumed the increased risks and hazards, if any, created by its imperfect and faulty construction. Appellant therefore seeks to invoke the rule of assumed risk which obtains in the class of cases where the servant in the erection or repair of a wall, building, or other like structure, which requires the construction and erection of a scaffold or platform upon which he may stand while performing the work, and which was constructed by himself with materials furnished by the master. In such cases the servant knows, or is presumed to know, the extent of the strain or burden to which the scaffold or platform will be subjected. The construction of the scaffold being under the servant's control, and the master having furnished the necessary and proper materials therefor, if the servant fails to make the structure sufficiently strong and convenient for the purposes for which it is intended, and he is injured because of some defect in its construction, the master cannot be held liable for the injury. In such cases whatever defect there may be in the scaffold or platform is due to the negligence of the servant, and not to that of the master. In the case under consideration the gallows frame was built under the sole direction and supervision of defendant's foreman. On this point plaintiff testified as follows: "I had never had any experience in building gallows frames. That is the first one I ever helped to build. I had never seen any before. I knew nothing about the proper method of constructing them. . . . The gallows frames were built under the direction of Mr. Draper, the foreman. He gave orders relating to putting them up." Draper, the foreman, testified, with reference to the construction of the gallows frame in question, as follows: "It was erected under my direction. I was there in charge of the job. I told the men what to do . . . told them how to put the timbers together." The record further shows that this gallows frame had been used at other points along defendant's line of railroad, and had been taken to pieces, "knocked down," and shipped to Ham's Fork, the place of the accident, where plaintiff assisted in putting it together.

He had nothing whatever to do with the selection of the timber with which it was constructed, nor with the designing of the plans upon which it was constructed. It does not appear that he appreciated or had any knowledge respecting the amount of strain or pressure to which the gallows frame could be safely subjected. In fact, we think it reasonably appears from the record that he was ignorant of the mathematical and mechanical principles by which its sufficiency could have been determined. And, further, it is not claimed that the accident was due to any negligence or defective workmanship of plaintiff, or that of his fellow servants in putting together and erecting the gallows frame. Appellant in its brief says: "The testimony fails to disclose that any of the timbers broke, or that any of the bolts or lines gave way until after the gallows frame had pitched into the river." This being admitted, it necessarily follows that whatever defect, if any, there was in the structure, was due to the imperfect plan or faulty design upon which it was constructed and braced. It thus appears that this is a case where the master, and not the servant, provided the place of employment, and the appliances with which the work was performed. Therefore this case falls within that class where the master is required to use reasonable care to provide the servant with sufficient and reasonably safe appliances with which to do the work required of him by his contract of employment.

In the case of *Austin Mfg. Co. v. Johnson*, 89 Fed. 677, 32 C. C. A. 309, practically the same questions were involved as are presented in this case, and the Circuit Court of Appeals, in the course of the opinion, say:

"The liability of the master cannot be determined simply by showing that the place where the workmen were engaged in his service was a scaffold, but it must depend upon the nature of the scaffold, the purposes it is to subserve, whether it could be properly left to the workmen to determine and control the method of its erection, whether they did in fact control its erection, or whether the master had charge thereof. In the case at bar the scaffold was intended, not only as a place where the workmen were to stand, but as a support upon which was to be placed the entire superstructure of the bridge during the course of its erection . . . it is clear that such workmen as the defendant in er-

ror [plaintiff] could not be expected to know the strain that would be placed upon this scaffold in the erection of a steel superstructure. It is equally clear that it would not have been open to the defendant in error [plaintiff] to exercise any control over the method in which the scaffold was erected or the material used in its construction. The purpose for which this scaffold was to be used, then, is inapplicable to the reasons upon which the rule is based, that ordinarily the master is not responsible for the safety of stagings which the workmen put up as aids in carrying out the particular work they are employed to perform. The use to which it was intended to subject this structure, in that there would be placed thereon, not only the dead weight of the material composing the bridge, but also the strain caused by placing the different parts in proper position, clearly shows that the erection of the staging was not a matter that could be safely left to the control of ordinary laborers, but required skilled control by persons who, from experience, would know what strain would be placed on the staging; and the evidence shows that in its erection the defendant in error [plaintiff] exercised no control or judgment; but, on the contrary, it was erected solely under the direction of Charles Killiper, who, as a skilled expert, had been sent out by the company to erect the bridge. . . . The scaffold was being used to support the dead weight of the material placed on it, and also to aid in placing the beams into place, with all the additional strain caused thereby. . . In view of the purposes to which this scaffold was to be put, and of the fact that the workmen had no control over the mode of its erection, the trial court rightly held that the defendant company would be responsible to the plaintiff for negligence in its construction." (*Woods v. Lindvall*, 48 Fed. 62, 1 C. C. A. 37; *National Refining Co. v. Willis* [C. C. A.], 143 Fed. 107).

We fail to find any reversible error in the record. The judgment is there affirmed, with costs.

McCARTY, C. J., and FRICK, J., concur.