## BEATTIE v. EDGE MOOR BRIDGE WORKS.

(Circuit Court, S. D. New York. March 30, 1901.,

MASTER AND SERVANT—INJURY OF SERVANT—UNSAFE PLACE TO WORK.

Defendant was engaged in putting in a tier of false work for an iron bridge, the work consisting of bents supported on piles. The plan required longitudinal cross braces between the bents to prevent them from tipping over lengthwise of the work. No braces had been put in between the last three bents, and none were being put in, when a traveler, weighing 30 tons, was run out over them, and put to work in raising timbers and materials to place, and such bents and the piles under them were broken down by the weight, killing plaintiff's intestate, who was working underneath. *Held*, that the structural defects of the work and the putting of the unbraced bents to use for carrying the traveler were matters for which defendant was responsible under its duty to exercise care to provide its servants with a reasonably safe place in which to work, and that it could not avoid liability on the ground that the negligence was that of fellow servants of the deceased.

On Motion for New Trial.

Thomas P. Wickes, for plaintiff.
Carl A. De Gersdorff, for defendant.

WHEELER, District Judge. The defendant was putting in a tier of false work upon piles, in bents, for an iron bridge. A traveler, weighing upwards of 30 tons, moving on a track on top, was used for raising timbers and materials to place. The plan of the structure required longitudinal X-braces between the bents to keep them from tipping over lengthwise of the work. None had been put on, or were being put on, between the sixth and seventh and seventh and eighth bents. The intestate was a well-experienced workman employed about the work upon and between these bents. The traveler was run out on the track resting upon these bents, and put to work. The bents went down under its weight. The piles under the eighth bent were broken, and the intestate was killed. There was evidence that he, under direction of a superior, pulled a pin that fastened a stringer between the bents just before the traveler fell, and that something seemed to then give way; also that he did not pull the pin, and that there were other stringers sufficient, so that nothing gave way because of such act. The principal rulings of the trial were made upon the idea that the intestate was entitled to a reasonably safe place to work in, free from dangers of defects in the structure itself for want of fit materials, or of completion not then in process at that place, making it unsafe for the uses to which it was put, as if it had been completed, by those in charge for the defendant, who, as to this, would represent the defendant, and not be fellow servants with the intestate; and that the intestate would not be bound to know the effect upon the safety of the structure in all its parts of doing work upon it in particular places, as he was directed. In taking exceptions to the charge, and in argument upon this motion for a new trial, the defendant's counsel appears to have understood it to have been stated to the jury that "the defendants were not intending to put on any more braces," and that the intes-

tate "did not appear to have been a skilled bridge builder." The expressions used were not intended to be, and do not now seem warrantably to have been, so understood. That as to X-braces, in this respect, was in these words: "The structure that was being built was nearly completed. As I understand it, they had got to the sixth and seventh bents, and were not intending to put on any more X-braces there, and they were not putting on braces when this happened." That as to the intestate was: "He was not an engineer. He don't appear to have been a skilled bridge builder that would understand the effect of putting in or taking out a timber. The evidence shows him to have been an intelligent man at work there." The evidence was clear that there were no X-braces beyond the sixth bent, and, when sifted, that none had been put on anywhere about there within a day or two before; and, while there was ample evidence that the intestate was an experienced workman on bridges, there was none that he was ever a bridge builder in the sense of being the constructor of the whole. The expressions were not used to control, and are not thought to have in any way misled, the jury in passing upon the questions submitted to them. The intestate was at work on a part of the structure sustained by the eighth row of piles, which had been completed as a part of the support to the place, and below the traveler between bents that had no X-braces, and had been put to use as if completed to carry the traveler above the place of his employment at the time; and the jury have found that the piles, or the bents, or both were dangerously defective, and that the defects caused the death of the intestate without his contributing fault. These were structural defects, not merely incidental to the doing of anything for the completion of these parts of the work. The procuring and the manner of setting the piles, and the putting these bents to use for carrying the traveler as if completed, belonged to the defendant, as master, represented by those put in charge of the whole. They do not seem to have been, while acting in that capacity, fellow servants of the workmen, as that one, if any one, who pulled the pin in question was. This case, in this respect, does not seem to be so much like Armour v. Hahn, 111 U. S. 313, 4 Sup. Ct. 433, 28 L. Ed. 440, much relied upon in behalf of the defendants, as like Mather v. Rillston, 156 U. S. 391, 15 Sup. Ct. 464, 39 L. Ed. 464, Railway Co. v. Archibald, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188, and Hyde Co. v. Kennedy, 40 C. C. A. 69, 99 Fed. 679, where principals were held liable to workmen for negligence of those put in charge of dangerous materials, structures, and appliances. No good reason is now made to appear for summarily disturbing the verdict. Motion for new trial overruled.