## Pressed Steel Car Co. v. John R. Herath, Adm'r.

1. MASTER AND SERVANT—*Master Bound to Use Ordinary Care to Prevent Injury to the Servant.*—The general rule of the common law is that the master is bound to use ordinary and reasonable care to prevent injury to the servant in the course of his employment, and if he fails to do so, and the servant is injured in consequence thereof, the master will be answerable for the damages resulting from such injury, unless the servant assumes the risk, or his own negligence contributes to the injury.

2. SAME—*Master Must Furnish Reasonably Safe Appliances and a Safe Place in Which to Work.*—The master is bound to use reasonable care to provide his servant with reasonably safe appliances with which to perform his labor and a reasonably safe place in which to work. This rule applies notwithstanding the work may be the wrecking of buildings damaged by fire.

3. SAME—*Such Duty to be Considered in View of the Character of the Work and Hazards of the Employment.*—The duty of the master to furnish the servant with safe appliances and a safe place in which to work is always to be considered in view of the character of work to be performed and the ordinary hazards of the employment.

4. SAME—*When Risks Involved in Carrying Out Master's Orders Are Assumed by the Servant.*—Risks involved in carrying out the master's orders are not assumed by the servant unless the danger is so obvious and threatening that no prudent man would undertake it.

5. SAME—*Servant Does Not Assume Risk of Master's Negligence.*—If in discharging his duty, the servant is injured through the negligence of the master, the latter is liable.

6. SAME—*Servant May Assume that Master Will Perform His Duty.*—The servant has a right to assume that the master will perform his legal duty toward his servant.

7. SAME—*Knowledge of Dangerous Condition of Things on Part of Servant Will Not Be Presumed.*—The burden of proof of the servant's knowledge of danger is on the master, and unless it appears from the evidence that he had such knowledge, it will not be presumed.

8. INSTRUCTIONS—*As to Credibility of Witnesses.*—An instruction that the credibility of the witnesses is a question exclusively for the jury, that the law is, that where a number of witnesses testify directly opposite to each other, the jury are not bound to regard the weight of the evidence as evenly balanced, but have a right to determine from the appearance of the witnesses on the stand, their manner of testifying, their apparent candor and fairness, or lack thereof, the reasonableness or unreasonableness of the story told by them, their apparent intelligence or lack of intelligence, and from all the surrounding circumstances appearing on the trial which witnesses are more worthy of credit, and to give credit accordingly, is proper.

Trespass on the Case.—Death from negligent act.   Appeal from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge presiding.   Heard in this court at the April term, 1903.   Affirmed. Opinion filed October 8, 1903.

WALKER & PAYNE and EDWARD R. NADELHOFFER, attorneys for appellant; E. C. LINDLEY, of counsel.

J. L. O'DONNELL and BARR, BARR & BARR, attorneys for appellee.

MR. JUSTICE VICKERS delivered the opinion of the court.

This is an action on the case by the plaintiff as administrator of H. W. Smith, against the defendant below, for the negligent killing of plaintiff's intestate on February 26, 1901.   The case was tried in the Circuit Court of Will County resulting in verdict of $2,000 in favor of the plaintiff.   A motion for a new trial was made and overruled and the defendant excepted and brings the record here, assigning that the court erred in overruling a motion to direct a verdict for the defendant, and to the giving of instructions for appellee.   The facts necessary to an understanding of the case are as follows:

A large factory building belonging to the appellant had been so damaged by fire that it became necessary to take what remained of the roof down.   The building was three hundred and twenty feet long east and west and eighty feet wide.   The roof was a double gabled roof, the gables being in the east and west ends.   The roof was so constructed that there was a valley running the entire length of the building.   This valley was constructed of galvanized iron, and was about two feet wide and six inches deep.   The roof was made by sheeting fastened to rafters which ran east and west and rested on trusses placed twenty feet apart.   The sheeting was covered with corrugated iron.   The trusses rested on the wall at one end and on columns in the center.   The rafters were set in niches in the trusses.   From one column to another on either side was called a section.

At the time of the accident which caused the death of

plaintiff's intestate the appellant had a force of men engaged in taking down the roof under the direction of Williams, who was foreman of what is called the floor gang. The roof was taken down in sections. The carpenters would go above with saws and hatchets, cut loose one end of the rafters from the truss, thus allowing the loose end to sag down and by its weight pull the rafters out of the niches on the other end, causing a section to fall to the floor below. The floor gang would then clear away the debris and another section would be cut down. The deceased belonged to the floor gang but had not worked there before the morning of the accident, which happened about eleven o'clock in the forenoon. The roof had all been taken down except two sections at the west end of the south wing. The work of taking down the roof began at the east and proceeded west section by section until all had been taken down except two sections next to the west end on the south side. When the third section from the west came down a portion of the valley opposite section three failed to come down. After the rubbish from section three was cleared away by the floor gang, the foreman, Mr. Williams, ordered the floor gang to pull on a rope that was attached to the remaining portion of the valley that was still hanging opposite the place where section three had been. The rope was about 130 to 150 feet long. Before the pulling began, section two had been cut loose by the carpenters, but had not fallen, and the supposition is that the hanging portion of the valley in some way held section two in place. Section two had been cut loose by the direction of foreman Williams, and it is not shown that the deceased knew that section two had been cut loose. By direction of foreman Williams, the floor gang, composed of seven men, including the deceased, first pulled south, and failing to break loose the hanging valley after some three or four pulls, Williams commanded the men to change position and pull west toward the west door. This order was obeyed and the men made three or four pulls, pulling each time when foreman Williams gave the order to pull. Some of the

men were under section one and some under section two. Suddenly a cracking noise was heard above and that part of section two next to the ridge pole came down, the east end striking the floor first. The section pitched west, and the deceased, Henry Smith, was caught under the northwest corner of the section and killed. At the sound of the falling section all the men ran west and all of them reached a place of safety except the deceased, Smith. The witnesses are not agreed whether Smith ran any distance or whether he merely started to run and tripped and fell before he was struck. It is shown that there were four bunches of copper wire and several large bars of iron on the floor near where Smith's body was found, which may have caused him to trip and fall. It is shown that the wire and bars of iron had been there three or four days before the accident. The deceased had only assisted in taking down one section before he was killed and the manner of taking it down was by use of a pole called a gin-pole, which was lashed to the truss and ropes attached to it, which when pulled would cause the rafters to slip out of place at the ends and the section would fall of its own weight. The pulling on the rope attached to the gin-pole and on the one fastened to the gutter or valley were different in the manner of the work and for a different purpose, and while foreman Williams testifies that he expected section two to fall as a result of pulling on the valley opposite the place where section three had been, it does not appear that the deceased was informed that section two had been cut loose, much less that it was likely to fall.

The declaration is in three counts. The first charges the defendant with a violation of its duty to exercise reasonable care to provide plaintiff's intestate with a reasonably safe place in which to perform his duty, and with a violation of the duty of the defendant not to expose plaintiff's intestate to unnecessary danger in and about the performance of his work.

The second count charges a violation of the duty of the defendant to exercise reasonable care to furnish plaintiff's

intestate with a reasonably safe place to work and with a failure to furnish reasonably safe and suitable braces to keep that portion of the roof under which the deceased was required to work from falling, while deceased was there engaged in carrying out the orders of the defendant, and a failure to keep the floor where the plaintiff's intestate was engaged in pulling at the rope free and clear of obstructions.

The third count contains the same averment as to the duty to furnish a reasonably safe place for deceased to work and not to expose him to unnecessary danger as the first, and contains also the further averment that the defendant, by its foreman, ordered the deceased from a place of safety into a place of danger; that the danger was known to the defendant's foreman and unknown to plaintiff's intestate.

The first assignment of error is that the court erred in refusing to take the case from the jury, and appellant's counsel have made a very able argument in support of this contention. The argument is that because the work in which plaintiff's intestate was engaged was the demolition of a building and therefore necessarily dangerous, that the master is in all such cases absolved from the duty to furnish the servant a reasonably safe place in which to perform his work, and numerous cases are cited which seem to support that contention.

The general rule of the common law is that the master is bound to use ordinary and reasonable care to prevent injury to the servant in the course of his employment and if he fails to do so, and the servant is injured in consequence thereof, the master will be answerable for the damages resulting from such injury, unless the servant assumes the risk or his own negligence contributes thereto. Am. & Eng. Ency., Vol. 20, 54, (2d Ed.), and cases there cited. Subject to the limitation of the foregoing rule respecting the assumption of the risk by the servant, this rule of the common law is applicable to all cases and under all circumstances where the common law prevails and the relation of master and servant exists. Growing out of this general

duty of the master to the servant, it has accordingly become the settled law that the master is bound to use reasonable care to provide his servant with reasonably safe appliances with which to perform his labor, and a reasonably safe place in which to work.   Am. & Eng. Ency., Vol. 20, p. 55, (2d Ed.); St. L., A. & T. H. R. R. Co. v. Holman, 155 Ill. 21; Ill. Steel Co. v. Schymanowski, 162 Ill. 447; Consolidated Coal Co. v. Haenni, 146 Ill. 614; Hines Lumber Co. v. Ligas, 172 Ill. 315; Offutt v. World's Col. Ex. Co., 175 Ill. 472; Ross v. Shanley, 185 Ill. 390.

This duty is always to be considered in view of the character of work to be performed and the ordinary hazards of the employment.   Libby, McNeill & Libby v. Scherman, 146 Ill. 540; Pantzar v. Tilly, Foster Iron Co., 99 N. Y. 368; St. L., A. & T. H. R. R. Co. v. Holman, *supra.*   Expressions can be found in the opinions of the Appellate Court which seem to sustain the contention of the appellant that these general rules of the common law are not applicable to a case where the work to be performed is the dismantling of a building, but when it is remembered that the Appellate Court is required to pass on controverted questions of fact as well as questions of law, all such expressions should be understood as a statement of a conclusion of fact in the case before the court, rather than the announcement of a general rule of law.   In such cases the Appellate Court is exercising precisely the same functions as a jury, only, unlike the jury, giving its reasons for its conclusions, and it is this blending of the function of the court and jury that sometimes misleads counsel into the supposition that the court has declared the result of purely controverted questions of fact as conclusions of law.   Applying this distinction it will be found that the cases relied on by appellant as establishing his contention are not inconsistent with the general duty of the master to use reasonable care to avoid injury to his servant, and to furnish him reasonably safe appliances and a reasonably safe place to perform his labor, having in view the character of the work and the ordinary and usual hazards attending the same, even though the work be the demolishing of buildings or other structures.

Again, in the case at bar it is charged in the third count of the declaration and the proof tended to establish that the plaintiff's intestate was ordered by foreman Williams into a place of known danger of which deceased was ignorant, without giving deceased any warning of the danger; and if the jury found the facts as stated in this count, which under the evidence might well be so found, the defendant would be liable. Risks involved in carrying out the master's orders are not assumed by the servant unless the danger is so obvious and threatening that no prudent man would undertake it. Wood on Master and Servant, Sec. 387.

The servant does not stand on the same footing as the master. The master commands and it is the primary duty of the servant to obey, and if in discharging this duty the servant is injured through the negligence of the master, reason and authority concur in requiring compensation. Patterson v. Pittsburg, etc., R. R. Co., 76 Penn. 389.

That the danger was not of that obvious and immediate character which no prudent man would risk is shown by the fact that the six other fellow-workmen unhesitatingly proceeded with Smith to carry out the order of the foreman. Williams was there as a vice-principal; he gave orders and his orders were obeyed. No claim is made that he was in any sense a fellow-servant with Smith. It was his duty to know that the place into which he ordered the deceased was reasonably safe, or at least to give warning of all such dangers as were known to him, and the deceased had a right to rely on the assumption that this duty would be performed. Ross v. Shanley, 185 Ill. 390, and case there cited.

If it be said that the deceased had knowledge of the dangerous condition of things which caused his injury, it is sufficient to reply that the defendant has wholly failed to prove such knowledge on the part of the deceased and the burden of proving this is on the appellant, and unless it appears from the evidence that he had such knowledge it will not be presumed. City of LaSalle v. Kostka, 190 Ill. 130; Wabash, St. Louis & Pacific Ry. Co. v. Shacklet, 105 Ill. 364.

There was no error in refusing to direct a verdict for the defendant.

Complaint is made that instruction number 4 given for appellee is erroneous. The instruction is as follows:

" The court instructs the jury that the credibility of the witnesses is a question exclusively for the jury, and the law is, that where a number of witnesses testify directly opposite to each other, the jury are not bound to regard the weight of the evidence as evenly balanced. The jury have a right to determine from the appearance of the witnesses on the stand, their manner of testifying, their apparent candor and fairness, or lack thereof, the reasonableness or unreasonableness of the story told by them, their apparent intelligence or lack of intelligence, and, from all the surrounding circumstances appearing on the trial, which witnesses are more worthy of credit, and to give credit accordingly."

This instruction is not open to any criticism, and a similar instruction has been approved by our Supreme Court in City of LaSalle v. Kostka, *supra.*   The objection to instruction number 3 is equally untenable. Finding no error in the record the judgment is affirmed.

Appellee, under the rules, furnished a supplementary abstract of the record. Upon an examination of the abstract furnished by appellant we are of the opinion that the appellee was justified in furnishing the supplementary abstract and that the costs thereof should be taxed to appellant.

Mr. Presiding Justice Dibell took no part in the decision of this case, he having presided at the trial in the court below.