**Harry Wilson, Appellant, v. Monmouth Pottery Company, Appellee.**

**Gen. No. 5,034.**

1. VERDICTS—*when not disturbed.* A verdict will not be set aside on review as against the weight of the evidence unless clearly and manifestly so.

2. MASTER AND SERVANT—*burden to show knowledge of defect.* *Held,* that the burden of proof was not upon the master to show that the servant had knowledge of a defect in a scaffold by reason of which such servant was injured.

3. MASTER AND SERVANT—*what care required of latter.* In the exercise of ordinary care a servant cannot close his eyes to visible or obvious defects and then be heard to say that he did not see such defects and had no knowledge of them.

4. MASTER AND SERVANT—*application of rules of law relative to injuries received from defective appliances, etc.* The rules of law relating to injuries received from defective appliances and machinery used by the servant, apply to defects in the construction of a scaffold.

Action in case for personal injuries. Appeal from the Circuit Court of Warren county; the Hon. ROBERT J. GRIER, Judge, pre-

siding. Heard in this court at the April term, 1908. Affirmed. Opinion filed October 19, 1909.

CARNEY, CARNEY & FRANK, for appellant; C. B. WILSON, of counsel.

L. H. HANNA and J. H. HANLEY, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

Appellant, Harry Wilson, was employed by appellee, the Monmouth Pottery Company, during a part of July and August, 1905, to repair its smoke stacks at its plant in Monmouth, Illinois, and during the latter part of August was engaged in rebuilding the flues in a stack about six feet square and sixty-five feet high. There were two of these flues about two and one-half feet wide east and west and five and a half feet in length. They were built of fire brick, had four inch walls, and occupied practically the entire inside of the stack. Each was independent of the stack, and of the other, with a space of about an inch between all walls for expansion and contraction. To construct these flues a scaffold was built in each by projecting a brick an inch and a half or two inches at the corners at each side of the flues nearly opposite each other, on the ends of which were placed two by four timbers. On these were laid two inch planks, about five and one-half feet long lengthwise of the flues. There was also a scaffold on the outside of the stack, from which material was passed through a hole about two feet square, through the west outside wall. This hole was filled up and another made higher up, and the scaffolds were raised as the work progressed. On Friday, August 25, appellant was absent, and John Strand, who was head kiln burner for appellee, conducted the work in place of appellant for that day. On Saturday morning, August 26, appellant resumed the work and after he had worked for a time on the scaffold in the west flue, it gave way, and he fell to the bottom of the stack, cutting his head and mangling his foot. He brought this

suit in the Circuit Court of Warren county to recover damages for the injuries so sustained. His amended declaration contained two counts, and averred in substance that appellee constructed, or caused to be constructed, an unsafe scaffolding or platform in a certain stack, and permitted the same to be and remain in an unsafe condition, of which appellant had no knowledge, and that while appellant was working on said scaffold, in the exercise of due care for his own safety, said scaffold gave way and appellant fell to the bottom of the shaft and was permanently injured. There was a plea of not guilty, a trial and a verdict of not guilty. A motion for a new trial was denied, judgment was entered on the verdict, and against appellant for costs, and Wilson appeals.

Appellee testified that when he asked leave of absence for the day the superintendent asked him if Strand could not work in his stead; that appellee replied that he did not care; that the superintendent asked if it were against the rules of the union, and he answered that the union would not find it out as it was inside work, and that Strand was satisfactory to him. The superintendent testified that he opposed appellant's leaving for that day because they were anxious to have the stack completed as soon as possible and did not wish to be delayed on account of the heavy business they were doing; and that appellant suggested and requested that Strand do the work during his absence, and that after asking the question about the union Strand was placed at the work at appellant's suggestion. It was therefore a disputed question of fact whether appellee placed Strand at this work, or whether Strand was put at the work because appellant requested it in order that he might get a day off without stopping the work. The jury therefore were warranted in believing that appellant selected Strand to take his place for that day.

Appellant was a mason of sixteen years' experience and more than ordinary intelligence. He was injured August 26, 1905, and had worked repairing appellee's

smoke stacks since the preceding 21st of July. He testified that nothing was said when he commenced about how the work should be done; he had done considerable work there and knew what was wanted and had done this kind of work a good many times. He admitted suggesting the method of constructing the necessary scaffolding. Appellee furnished the material and a carpenter to saw the lumber and appellant built the scaffolds, except the one that fell and that was the same scaffold which appellant had built the second below, but which Strand moved up to the position from which it afterwards fell. The proof showed that the inside measurements of the core where it was placed by appellant below were $31\frac{3}{4}$ inches at the south end and $31\frac{1}{4}$ inches at the north end, while the same measurements at the place to which Strand removed said scaffold were 31 inches and $31\frac{1}{4}$ inches scant, and each were five feet and six inches long the other way; so that the timbers were a closer fit where the scaffold fell than where appellant had put them. Appellant testified that he had worked upon this scaffold half an hour, and appellee contends for a longer time, when it fell, and the proof shows that the light in the stack was sufficient to afford a clear view of the scaffold and its construction. The only particular in which it is claimed this differed from those built by appellant, was in the use of wedges at the ends of the two by fours. Appellant testified that he used them in the scaffolds he built, and the carpenter testified that he did not make any wedges, and did not remember any. Holly, appellant's assistant, testified that he did not find any when he knocked down the scaffolding, and that he never saw appellant make any wedges. Appellant's helper testified that he did not remember taking up any scaffolding that was wedged. Strand testified that he did not see appellant use wedges.

Appellant argues that his positive testimony, although uncorroborated, is entitled to more weight than the negative testimony of four witnesses, tending to show that no wedges were used in the scaffolds built

by appellant. Whether appellant used wedges, whether they were necessary for the construction of a reasonably safe scaffold, and whether appellant's positive evidence was overcome or outweighed by appellee's negative evidence, were questions of fact for the jury.

The evidence strongly tends to show that appellant's attention was repeatedly called to the dangerous condition of the scaffolds built and used by him, and that it was suggested that they be made more secure, and that he replied if they suited him he did not know that it ought to bother others. To a suggestion from his helper that the scaffold was dangerous, he replied that he supposed the helper was insured. Two witnesses testified that appellant said, after the accident, it was his own fault; a third, that appellant remarked it was his annual fall. Another testified that, when told they were going on with the work, appellant said, "For God's sake, don't build that same kind of a scaffold." One witness testified that after returning to appellee's employ, appellant said it was a wonder he had not been killed long ago. Most of these statements appellant denied.

It was for the jury to say whether the evidence sustained appellant's averment that he was in the exercise of due care when injured, or whether his negligence contributed to the injury. If they believed the testimony for appellant they were not justified in finding appellee not guilty. If they believed the evidence for appellee they were justified in so finding. The fact that they found appellee not guilty is conclusive that they believed the testimony introduced by appellee. They were the judges of the facts and of the credibility of the witnesses. In Steffy v. People, 130 Ill. 98, the court said: "Whether the evidence warranted the verdict was a question of fact peculiarly within the province of the jury to determine, and great weight is to be given to their finding. Courts are reluctant to substitute their opinion for that of a jury upon controverted questions of fact. To justify this court in

reversing on the ground that the evidence was insufficient, it must appear that the finding of the jury is not sustained by the evidence, or that it is palpably contrary to the decided weight of the evidence.'' Many authorities will be found in the Supreme and Appellate Reports to the same effect, the latest to which our attention is called being People v. Horchler, 231 Ill. 566. We conclude from an examination of all the testimony that we would not be justified in disturbing the verdict on the ground that it was contrary to the evidence.

Counsel for appellant urge that it was improper to permit Anderson, the carpenter, to testify for appellee relative to the construction of the scaffolds built by appellant, and that they were dangerous to work upon.

The record discloses that Anderson was called by appellant and testified concerning the same subject-matter in much the same language. His testimony for appellee was competent, first because the subject was introduced by appellant, and it was proper to permit appellee to meet it as a matter of defense, and second, for the purpose of showing that appellant might have had notice of the method of the construction of the scaffold, and might have known of any defect in the same. The extent of appellant's knowledge of the scaffold that fell and its construction, and whether his means of knowledge were equal to appellee's, were questions of fact for the jury.

Counsel for appellant contend that the burden of proof was upon appellee to show that appellant had knowledge of the defect in the scaffold, and cite Swift v. Gaylord, 126 Ill. App. 281; Pressed Steel Car Co. v. Herath, 110 Ill. App. 596; C. & E. I. R. R. Co. v. Hines, 132 Ill. 161; City of La Salle v. Kostka, 190 Ill. 130. We have carefully examined these cases, and are of the opinion that they do not support appellant's contention. It is held in some of them that the employe is not bound to make what is termed therein an inspection, but by that it is not meant that the employe is not required to exercise ordinary care for his own safety, or that he can close his eyes to visible or ob-

vious defects. On an appeal, the court said in the Swift case, 229 Ill. 330: "In actions for personal injuries it has always been held in this state that the plaintiff must allege and prove that he was free from negligence contributing to the injury * * *. Knowledge or want of knowledge of a defect may be inferred from the circumstances, but by whatever evidence the fact must be shown, the burden of proof in that regard rests upon the plaintiff."

It is urged that appellant had a right to presume, in the absence of actual knowledge to the contrary, that appellee had discharged its duty. Appellant was required to exercise ordinary care for his own safety, and the law charges him with notice of any visible or obvious defects in the scaffold, which in the exercise of ordinary care he might have discovered, although he had no actual knowledge of them. In the exercise of ordinary care he could not close his eyes to visible or obvious defects, and then be heard to say that he did not see such defects and had no knowledge of them.

It is also contended by counsel that the rules of law relative to injuries received from defective appliances or machinery used by the servant do not apply to a defect in the construction of a scaffold. We are of the opinion that there is no merit in this contention. In Armour v. Brazeau, 191 Ill. 127, a case where a servant was injured by the breaking of a defective plank in a scaffold, the court said: "If a defect in an appliance is open and obvious, so that by the exercise of ordinary care in the use of the appliance, the employe will have knowledge of the defect, he is bound to take notice of the defect. He cannot assume a fact against his own knowledge, and assume that a defect open to his observation does not exist."

There being no harmful error in the exclusion or admission of evidence, or in the ruling of the court upon the instructions, the judgment of the Circuit Court is affirmed.

*Affirmed.*