John P. Elliott *vs.* William N. Sawyer.

Penobscot.    Opinion October 10, 1910.

*Master and Servant.   Damages.   Safe Appliances.   Fellow Servants.   Inspection.   Injury to Servant.   Evidence.   Harmless Error.   Assumption of Risk.*

The plaintiff, a brick mason, was employed by the defendant, a contractor, in the erection of the walls of a brick building.  A staging upon which the plaintiff was at work collapsed and he was precipitated to the ground, and injured.  The stagings were in fact built by the carpenters employed upon the building, although occasionally a mason would assist to expedite the work.  The staging in question, at the time of the plaintiff's injury, was admittedly incomplete and insecure, and collapsed because it had not been sufficiently stayed.  The defendant contended that he had fully discharged his duty in the premises to his servants by furnishing them suitable and sufficient materials, with which they undertook to build the stagings for themselves, and that any negligence of the builders of the staging was the negligence of the plaintiffs' fellow servants, for which he is not responsible.  The defendant also contended that the plaintiff went upon the staging to work, without direction or invitation from him, before it was ready for use, and when it was obviously unsafe, and that the plaintiff assumed the risk, and also was guilty of contributory negligence.

*Held:*  1.  If a master undertakes to furnish completed stagings and other like aids to construction, for his servants to use during the erection of a building, and fails to use reasonable care to make them reasonably safe, he is responsible to a servant, who, while properly engaged in his work, is injured in consequence thereof, unless the servant has assumed the risk, or is at fault himself.  The servants who build the stagings are not fellow servants of those who afterwards use them.

2.  But a master may fully discharge his duty as to stagings by furnishing suitable and sufficient materials to his servants for them to use in building the stagings, if they undertake to build them for themselves.  In such case, each servant in the general undertaking is a fellow servant of each of the others.  The stage-builders are fellow servants of those who afterwards use the stagings, and for their negligence the master is not responsible.

3.  When a master has assumed the duty of furnishing his servant with a completed staging to work upon, and has impliedly directed or invited him to go upon it, and it appears to the eye, without particular examination, to be ready for use, and in the same condition that the stagings, before that time, had customarily been in when ready for use, the servant may assume that the master has done his duty. The failure to make a particular inspection is not contributory negligence.

4.  When, in a suit by a servant against his master for injuries caused by a defective and unsafe staging, it is claimed, that the servant was improperly and prematurely upon the staging before it was completed, it is permissible to show that the servant was impliedly directed or invited to go upon it, and for that purpose, evidence of the customary manner in which the work on the building had previously been carried on is admissible.

5.  The evidence warranted the jury in finding that the defendant had assumed the duty of furnishing the staging as a completed structure for the plaintiff to use, that the plaintiff was impliedly directed or invited to go upon the staging, and was properly upon it, that he did not assume the risk, and that he was not guilty of contributory negligence.

6.  When the jury have properly found that the plaintiff was directed or invited to go upon a staging to work, and that the defendant had assumed the duty of furnishing it as a completed structure, and when at the same time the defendant admits that the staging was incomplete, insecure and unsafe, by reason of not being sufficiently stayed, and it appears that that was the cause of the plaintiff's injury, it necessarily follows that the defendant was negligent. In such case, the character of the staging in other respects becomes unimportant and immaterial. And the defendant cannot be said to be aggrieved by the erroneous admission of testimony, respecting the safety of the staging, since he could not have been prejudiced by it.

7.  Exceptions to the erroneous admission of testimony will not be sustained, if the excepting party was not aggrieved by it.

8.  That the testimony excepted to was erroneously admitted is not decided.

9.  The verdict of the jury was manifestly too large.

10.  A servant assumes all risks incidental to his employment which are obvious, and all which he knows, or which in the exercise of due care he would or ought to have known, including the risk of negligence of fellow servants.

On exceptions and motion by defendant. Exceptions overruled. Motion overruled if remittitur be made.

Action on the case to recover damages for personal injuries sustained by the plaintiff and caused by the alleged negligence of the defendant. Plea, the general issue. Verdict for plaintiff for

$5000. The defendant excepted to several rulings during the trial and also filed a general motion for a new trial.

The case is stated in the opinion.

The declaration in the plaintiff's writ is as follows:

"In a plea of the case, for that the plaintiff on the thirteenth day of November, 1908, was a servant of the defendant and as such servant of the defendant he was employed as a mason or bricklayer in the laying bricks in and upon one of the walls of a new building under construction on the grounds of the Eastern Maine General Hospital; said wall where said plaintiff was working was at a height of 35 feet above the ground. While laying said bricks and doing his work the plaintiff was compelled to stand upon a stage or platform outside of said wall; now, the defendant owed to the plaintiff, his servant the duty and obligation by the law of the land, to furnish or to provide him a reasonably safe place in which to do his work, and with machinery and appliances reasonably safe with which to do the same, and to keep and maintain said place, machinery and appliances in a reasonably safe condition and proper state of repair; and the plaintiff further says it was the duty of the defendant especially to furnish for his use a reasonably safe stage or platform sufficiently strong to support him as well as the other weights and burdens necessarily placed upon it, in the conduct of his work; that the plaintiff could not do his work and discharge his duty to the defendant without such stage or platform; yet the plaintiff says that the defendant wholly disregarding his duty as aforesaid to him, on the said 13th day of November, carelessly, negligently and unlawfully caused and permitted to be erected and maintained against the aforesaid wall, a weak, defective and insufficient stage or platform for the plaintiff's use, and then and there ordered and directed the plaintiff to stand, abide and work upon said stage or platform in the discharge of his duty; and the plaintiff further says that said stage or platform, which was constructed of timbers and boards was dangerous and wholly unsafe, of which dangers and unsafe condition the plaintiff was then and there wholly ignorant. Now on said 13th day of November, aforesaid, about the twelfth hour, the plaintiff was standing upon the stage aforesaid, doing his accustomed

work in the service of the defendant, his master, in the exercise of due and ordinary care, fully relying upon the strength of said stage, as was his right, when the same without warning and with great suddenness gave way, fell and collapsed, so that and whereby the plaintiff was hurled and precipitated to the ground below, a distance of 35 feet, as aforesaid, then and there striking and falling upon bricks, stones, and sticks, with exceeding force and violence; and the plaintiff says that by and in consequence of said fall all the bones in and about the right elbow were crushed and broken; that his left arm was broken above the elbow; that both of his shoulders were bruised, hurt and injured; that his back, sides and legs were bruised and hurt; and that the muscles, sinews, nerves and tendons of both arms and legs were strained, hurt and torn and great injuries were wrought and done to other parts of the plaintiff's body; and the plaintiff says that in consequence of the injuries sustained by him, as aforesaid, he hath greatly suffered with bodily and mental pain from thence hitherto; that he hath been obliged to lay out and hath laid out great sums of money in the employment of surgeons and physicians and for medicines and nursing that he might be cured; and the plaintiff is not yet cured nor will he ever be well again; his right arm is rigid and useless; he still suffers great pain and misery; he is wholly unable to labor nor is it likely that he will ever be able to labor again, by reason of all which the plaintiff hath lost and will hereafter lose great gains that would have and should hereafter accrue to him as the wages of his hire as a mason.

"And the plaintiff says that, that the hurts and injuries aforedescribed were received by him wholly without his fault and solely because of the wrong and negligence of the defendant; which said wrong and negligence were the erecting and maintaining of the aforesaid unsafe stage and providing such unsafe stage for the plaintiff to do his work upon, of all which the defendant was well knowing or ought to have known in the exercise of due care, to the damage of said plaintiff (as he says) the sum of Ten Thousand Dollars."

*Louis C. Stearns, and Louis C. Stearns, Jr.*, for plaintiff.

*John E. Nelson*, for defendant.

SITTING:   EMERY, C. J., SAVAGE, PEABODY, SPEAR, CORNISH,
KING, JJ.

SAVAGE, J.   Case for personal injuries.   The defendant was a
contractor, engaged in building a brick addition to the Eastern
Maine General Hospital at Bangor.   The plaintiff was a brick
mason employed in that work by the defendant.   A staging on
which the plaintiff was at work collapsed, or "jackknifed" as the
witnesses termed it, and the plaintiff was thrown to the ground, a
distance of about thirty-five feet, receiving thereby serious injuries.
The plaintiff claims, and all the evidence tends to show that the
cause of the collapse was the fact that at that time the staging was
not properly stayed.   The verdict was for the plaintiff, and the
case comes up on defendant's motion for a new trial, and on his
exceptions.

There is not much dispute about the material facts.   We think
the evidence warrants the following statement.   The general method
of construction of the stage from the ground was as follows: Six or
eight feet from the wall of the building tall poles were set up.   Close
to the wall pieces of lumber each four and one-half feet long were
placed upright at suitable intervals.   Short sticks called putlogs to
support the flooring of the stage were placed, one end on the top of
each upright and the other end on the ledger board which was
fastened by clamps to the outside poles, extending from pole to pole.
The putlogs were nailed to the ledger board.   The poles were
stayed through the windows to a staging within the walls.   Inside
stays or ledger boards running lengthways of the wall were nailed
to the uprights.   The flooring completed the stage so far.   When
the masons standing on this stage had laid up the wall as high as
they could conveniently, the process of stage building was repeated.
Other uprights were placed on the ends of the putlogs next to the
wall, directly over the uprights below, and were "toe-nailed" to the
putlogs.   Other putlogs were placed on the top of the new uprights,
and extended to a ledger board.   The staging was stayed to the
inside stage as before, and was then ready for use.   This process
was repeated as often as necessary.   The stagings were in fact built

by the carpenters, although occasionally a mason would help a little to expedite the work, as by putting up planks. It appears that the general plan pursued was for the carpenters to build a stage on one side of a building, while the masons were at work on another stage at some other part of the building. In this way, as a general rule, when the masons had completed their work on one stage, they would find another already prepared for them, and thus would lose no time. Generally the ends of the stage at the corners of the building were made ready and stayed first, so that the two masons who were to build up the leads at the corners could build the leads while the carpenters were completing the rest of the stage. By thus starting the leads, the wall would be ready for the other masons to work on when the whole stage was done. All the work on the building was done under the charge and supervision of the defendant's general superintendent, Sturtevant.

On the morning of the day of the plaintiff's injury Mr. Sturtevant directed two masons to go upon the staging in question, which was on the west side of the building, and build up the leads at the corners. Meanwhile the masons' crew, including the plaintiff, were at work on a staging at the same level on the south side of the building. An hour later, having finished their work on the south side, they came around the corner of the building onto the staging which afterwards collapsed. They found the staging floored, the leads up, and brick and mortar on the stage, ready to be put into the wall. The brick and mortar had been placed there by the masons' tenders. The masons had no express directions from the defendant or his superintendent to go upon the staging, but they went there in the regular course of their work, because there the wall had been made ready for them. The plaintiff made no inquiry about, or examination of, the stage to see if it was completed and properly stayed. He assumed from the appearance of the stage and the existing conditions that he was expected to go to work then upon the stage. He knew however that sometimes men went up onto a staging to put up the leads before the staging was completed. He and his fellow laborers were upon the stage laying up the wall two hours or more before the stage collapsed.

During some part of the time the plaintiff was working upon the stage, and at the moment of the collapse, a single carpenter was at work underneath the staging, nailing on stays from the outside poles through the windows to the inside staging. The stays were nailed on close up to the ledger boards, a few inches below the planking of the upper stage. Just when this carpenter began this work does not clearly appear. But the jury were warranted in finding that he did not commence staying the stage until after the masons had gone upon it. In fact, this carpenter, who was a witness, so testified. And inasmuch as thirty-five to forty feet of the sixty foot stage still remained unstayed at the time of the accident, a strong inference arises that he had not then been at work a long time. He had not worked directly under the plaintiff, but when the stage fell he had reached a point about fifteen feet from him. The part of the stage which fell was about midway of the building.

Upon these facts, the defendant denies all responsibility. He claims, first, that he did not undertake to furnish a staging as a completed structure, on which the plaintiff was to do his work, but that he furnished the necessary materials for the stage, suitable in kind and sufficient in quantity, with which the workmen, either the masons or their fellow servants, the carpenters, or both, were to build the stagings as they liked, and upon their own responsibility; next, that even if he had undertaken to furnish the stagings as completed structures, in this case he did not in fact furnish this stage to the plaintiff, because it was obviously not completed, and it was not intended for the masons to go upon it, until more securely stayed, and the plaintiff went upon it without direction or invitation, prematurely, before it was ready to be furnished or had been furnished in fact; and, lastly, that the plaintiff, in going upon a stage so obviously incomplete and unsafe, both assumed the risk, and was guilty of contributory negligence.

As to the first point this is to be said. It is admittedly the duty of a master to use reasonable care to furnish for his servant a reasonably safe place for him to do his work. In the matter of stagings and scaffoldings, and other like aids to construction, built during the progress of the work, the master, if he undertakes to

furnish and does furnish a reasonably safe, completed structure, has fulfilled his duty.   If he undertakes to furnish such a structure, and fails to use reasonable care, and it is not made reasonably safe, he is responsible to a servant who is injured in consequence thereof unless the latter has assumed the risk, or is at fault himself.   He is responsible not only for his own personal negligence, but for the negligence of the servants whom he employs to build the structure. In doing the work, they are doing his work.   They are not fellow servants of others who may be employed by him to do other work in the same general undertaking.   *Pellerin* v. *International Paper Co.*, 96 Maine, 388 ; *McCarthy* v. *Claflin*, 99 Maine, 290.

On the other hand the master may fully discharge his duty as to stagings, if he furnishes suitable and sufficient materials, and his servants undertake to build the staging for themselves.   In such a case each servant is a fellow servant of each of the others.   The masons who lay the walls are the fellow servants of the carpenters, who, perchance, may build the staging.   If a servant is injured in consequence of the negligence of any of his fellow servants, whether of his own class or another, he has no remedy against the master. If a mason is injured because a carpenter has been guilty of negligence in building the stage, he cannot look to the master for compensation.   For it is well settled law that a servant assumes all the risk of the negligence of his fellow servants.   *Amburg* v. *International Paper Company*, 97 Maine, 327 ; *McCarthy* v. *Claflin*, 99 Maine, 290.

Whether, in any particular case, the master has assumed the duty of furnishing the stage as a completed structure is a question of fact to be determined by the jury.   In this case, the defendant testified that Sturtevant was his superintendent and had entire charge of all the work in his absence, and had full authority and discretion to manage the operation ; that it was a part of the duty of the carpenters to build the stagings ; that he directed Sturtevant to be sure and make everything strong ; that Sturtevant had authority to construct the stages ; that he employed Allen, the foreman of the carpenters ; that Allen was under the direction of Sturtevant ; that he himself was present when parts of the stage were built, and spoke

to the carpenter once or twice and told him to be sure and stay the stage, or something of that kind; that the stage was put in the charge of the carpenter, and that it was his duty to stay it; and finally, that he knew the stages would be built, and he had ordered them to be built under the direction of his general superintendent, Sturtevant. There is no question but that the materials furnished for the stage were suitable.

Upon the testimony of the defendant himself, we think the jury might properly find that he assumed the duty of furnishing the stage as a completed structure, and that he was responsible for it, if he furnished it to the plaintiff to work upon. *McCarthy* v. *Claflin*, supra.

There is no doubt but that the stage was unsafe. Indeed, it is the defendant's contention that it was obviously unfinished and unsafe, and that the plaintiff, had he been in the exercise of reasonable care, would have kept off from it.

Next, was the plaintiff properly upon the stage? In other words, had the defendant directed or invited him to go onto the stage to work in the condition it was in? It was not necessary that he should be expressly directed. It was sufficient if he was invited. The plaintiff says that he was invited, that the stage was held out to him as ready to be used; that it was so held out because according to the manner in which the work had been carried on, and was being carried on, while the masons were working on one stage the carpenters erected another; when the leads were up and the stock on the stage, the masons' crew, having finished on the first stage, went to the new stage, not because they were expressly directed to go, but because by the usual course of the work it was their duty to go, so understood by them and so understood by the master; and because on this occasion the leads had been put up by the express direction of the general superintendent, and the brick and mortar were on the stage. If under such circumstances the stage was held out to the plaintiff as ready for use, he was impliedly directed or invited to go upon it.

It may be that the bricks and mortar had been put upon the stage by the tenders prematurely, and without authority. But in view of the fact that only one carpenter was put to work staying

the stage, in connection with the fact that but for the use of this stage the masons would have had to be idle until the staging was done, it is not unlikely that the jury concluded that the defendant, or whoever represented him at the time, actually intended the stage to be used by the masons, when, and as it was. We should not disturb such a conclusion.

Did the plaintiff assume the risk of the want of staying? He assumed all risks that were incidental to his employment, all risks which were obvious, and all which he knew, or which in the exercise of due care he would have known, or ought to have known. *Caven* v. *Bodwell Granite Co.*, 99 Maine, 278; *Demers* v. *Deering*, 93 Maine, 272; *Babb* v. *Oxford Paper Co.*, 99 Maine, 298. But he did not assume the risk of the negligence of the master. *Jensen* v. *Kyer*, 101 Maine, 106. He had a right to rely upon the presumption that the master had not been negligent, *Caven* v. *Bodwell Granite Co.*, supra; not however being excused thereby from the reasonable use of his own faculties. The risk of stays, or the want of them, was not incidental to his employment. The neglect would have been obvious, and would have become known to the plaintiff, had he made an examination as to that feature, but he did not do so. He says he did not think of it. Was he bound to think of it? We think not. When a master has assumed to furnish his servant with a completed stage to work upon, and has invited him to go upon it, and it appears to the eye, without any particular examination to be ready for use, and in the same condition that the stages customarily have been when ready for use, we think it would be a severe and unnecessary rule to hold that a servant is bound at his peril to examine particularly as to the staying. It is a case where the servant may well presume that the master has done his duty. It is not shown that the plaintiff knew of the lack of stays. He says he did not. He went onto the stage from another at the same level, and not mounting from below, in which case he would have had a better opportunity to see. It appears that for some indeterminate length of time a carpenter on the stage below was nailing stays, fifteen or more feet away from the plaintiff. How long the time was we do not know. How many stays were nailed we do not

know.   The sound of a carpenter's hammer upon the stage of a building in the process of construction might have attracted the plaintiff's attention to the work the carpenter was doing, but if it did not, we do not think the circumstances require him to be charged with knowledge.   The claim that the plaintiff was negligent is practically disposed of by the foregoing considerations.   Under the circumstances the jury might well find that there was no contributory negligence.   And upon the whole we think that the defendant under his motion is not entitled to have the verdict set aside on the question of liability.

The defendant reserved several exceptions to the admission of testimony.   We need not state them in detail.   They may be grouped into two classes.   The plaintiff, against objection, was permitted to show by several witnesses that upon this job, after a stage had been made and the stock was upon it, and the men had gone up with the leads, it was the customary rule for the masons to follow.   It is true, as argued, that custom or usage does not excuse negligence.   If the plaintiff was negligent in going upon the stage, he was not less so because he customarily had gone under the same conditions.   But that was not the office of this evidence.   It was properly admitted to show, by the general way in which the work was carried on, that on this occasion the plaintiff was impliedly invited to go upon the stage, because it was according to the accustomed course of business.   And if it was a general custom on this job, as testified to, it must be assumed that the defendant knew it.   The only doubt we have is whether it is not a universal custom, and necessarily known to the defendant.   It is to be assumed that the jury were properly instructed in regard to the purpose and effect of this evidence.   The defendant can take nothing by these exceptions.

The defendant also claims to be aggrieved because the plaintiff was permitted to show by the opinion evidence of experts the safety of the stage in question, compared with stages built according to other plans ; also because experts were permitted to testify that in their opinion the defendant's stage was not a safe kind of stage. We do not find it necessary to consider the objections made to these

classes of testimony. Nor do we consider the point not raised, whether it is competent for an expert witness to give his opinion that a particular staging is safe or unsafe,—a question concerning which there is much contrariety of opinion expressed in the decided cases. The testimony, if admissible, tended only to show the defendant's negligence. It did not affect the other issues in the case. If, as the jury found, the defendant assumed the responsibility of building the stage, and if, as the jury also found, the defendant invited the plaintiff to use the stage, and the plaintiff did not assume the risk and was in the exercise of due care, then the defendant's negligence in not properly staying the stage is not denied. As we have said already, it is precisely the defense which is offered, that the stage was unfinished, unstayed and insecure, and obviously so. Hence upon the issue of the defendant's negligence, the testimony was immaterial. And since, upon the jury's findings, the defendant was necessarily negligent in not staying the stage, he could not have been prejudiced by testimony as to the character of the stage he undertook to build. For this reason, these exceptions must be overruled.

The defendant also contends that the verdict, which was for $5,000, is excessive. And we are impressed with the belief that such is the fact. Besides some minor injuries from which the plaintiff has recovered, his chief claim for damages rests in the fact that his right arm is permanently disabled, so that he never can pursue the business of a brick mason, or make any efficient use of the arm. He suffered a compound fracture of the bone at the right elbow joint. The olecranon process was broken off. The elbow and shoulder joints became stiffened. The elbow is stiff, and the shoulder largely so. He has but little use of his fingers. But at the time of his injury the plaintiff was sixty-two years old, with a life expectancy, as shown by mortality tables, of less than thirteen years. His earning capacity will naturally grow less as he grows older. He was afflicted with tuberculosis of the lungs, the natural effect of which will be not only to shorten his life, but to reduce his earning capacity while he lives. We think it is evident that the jury did not pay proper attention to these considerations. Upon the whole,

we think that the sum of three thousand dollars will afford all the compensation to which the plaintiff is entitled under the circumstances.    The certificate of the court will be,

>        *Exceptions overruled.*
>        *If the plaintiff, within thirty days after the*
>        *certificate of decision is received by the clerk,*
>        *shall remit all of the verdict in excess of*
>        *$3,000, motion overruled ; otherwise, motion*
>        *sustained, on the question of damages only.*