### NELSON v. MARTINSON.

(Circuit Court of Appeals, Eighth Circuit. March 19, 1914.)

No. 3932.

MASTER AND SERVANT (§ 286*)—ACTION FOR INJURY TO SERVANT—NEGLIGENCE OF FELLOW SERVANTS—QUESTION FOR JURY.

In an action by an employé against a contractor for the construction of a building to recover for a personal injury caused by the breaking down of a runway built by the carpenters on the sloping side of the roof, over which plaintiff was wheeling concrete for use by other workmen, the evidence *held* sufficient to warrant the submission to the jury of the ques-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tion whether the building of the runway was left to the workmen generally, so that its defective construction was due to the negligence of fellow servants of plaintiff, or whether defendant had taken it out of their hands by directing the carpenters to do it and assumed the responsibility for its being reasonably safe for the use of the other employés.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

In Error to the District Court of the United States for the District of South Dakota; James D. Elliot, Judge.

Action at law by Anton Martinson against J. B. Nelson. Judgment for plaintiff, and defendant brings error. Affirmed.

Morton Barrows, of St. Paul, Minn., for plaintiff in error.

Philo Hall, of Brookings, S. D. (Hall, Alexander & Purdy, of Brookings, S. D., on the brief), for defendant in error.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

SMITH, Circuit Judge. This was a suit by Anton Martinson, hereafter called the plaintiff, against J. B. Nelson, hereafter called the defendant, to recover damages for personal injuries. It resulted in a verdict for the plaintiff, and the defendant sued out this writ of error.

While the defendant had preserved numerous exceptions at the trial, he has submitted the case substantially upon the sole question of whether his motion for a directed verdict should have been sustained. This being the only question for consideration, it requires a somewhat detailed statement of the facts, assuming, however, that on all disputed questions the jury found for the plaintiff.

The defendant had the contract for building a new courthouse for the county of Brookings in South Dakota at the city of Brookings. This courthouse was of substantially fireproof construction. The defendant did not live at Brookings but went there often during the early stages of the work and less frequently thereafter. Oscar Johnson, a carpenter by trade, was the defendant's general foreman in charge of the construction of the building. He had under him various bodies of workmen, carpenters, brick masons, stone masons, plasterers, and common laborers. The principal work of the carpenters before the finishing of the building commenced was in building false work and scaffolds for the concrete workmen and bricklayers and inserting, if not constructing, window and door frames. The entire work was completed up to the roof which was to be of concrete. About three-fourths of this concrete was on and the portion at the southeast corner of the building was yet to be placed. The east side of the roof as planned sloped down from the dome to the edge of the roof at the rate of three inches of fall to a foot of horizontal distance. At the edge of the roof was a low parapet. It was necessary to construct a scaffold or runway along this roof and within a few feet of the eastern edge from north to south to carry material for the unfinished portion of the roof. The general foreman directed Evan Anderson, one of the carpenters, to take charge of the construction of this runway.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

He did so by constructing first a series of brackets on the roof at a distance of about eight feet apart upon which to lay planks. These brackets were constructed by taking lumber two inches thick, eight or ten inches wide, and seven feet long and resting the west end upon the roof. A similar piece of lumber stood upright at the end of each of these horizontal pieces, the width of the uprights extending from north to south, and three or four spikes were then driven through this end piece of the bracket into the end of the horizontal piece. As the roof fell three inches to a foot, in seven feet it would fall 21 inches, and, as it was necessary for the end piece to extend at least as high as the top of the 8 or 10 inch horizontal piece, the end pieces must have been from 29 to 31 inches in height. It appears that the spikes· used were 16 penny spikes, which are 3½ inches in length, so that they penetrated the ends of the horizontal pieces slightly more than one inch and a half. There was no diagonal piece from the lower part of the upright to the horizontal piece in these brackets. Owing to the sloping character of the roof, the horizontal piece at the west end rested upon a line substantially as all lines are without width, and the same is true of the upright which supported the horizontal piece. It was thus possible for either end of the bracket to slide upon the roof. The method used is frequently applied in the construction of scaffolds, but there are other and more secure ways of accomplishing the same thing. If the end piece was cut to fit under 'the horizontal piece, there would be no possibility of its breaking down from the shortness of the spikes or the like, and if the upright piece had in its width extended from east to west, and had lapped over upon the horizontal piece, spikes would have held far more firmly than driven into the ends of the horizontal pieces. Upon the completion of the brackets 4 parallel planks 2x10 inches were laid upon them, thus making a runway about 40 inches wide. The plaintiff helped to carry some of the lumber to the place where this runway was erected for use by the carpenters in its construction, but he denies that he took any part whatever in the actual construction. On the following day the plaintiff was assigned to aid in the laying of the concrete upon the balance of the roof. The concrete was mixed upon the ground, put into a wheelbarrow, carried up an elevator to the roof, then along this runway to the place where it was needed. Each wheelbarrow load of concrete weighed about 300 pounds, and the plaintiff himself weighed about 180 pounds. As he was wheeling such a load, the runway gave way, when the bottom of one of the uprights slid down the roof some inches, the runway itself gave down, and the plaintiff was thrown over the parapet to the ground beneath, a distance of about 40 feet, and as a result was severely injured. An examination of the runway immediately following the accident showed that the spikes were partially pulled out of the horizontal piece.

It is contended by the defendant that the plaintiff was the fellow servant of the carpenters who built the runway, and the master is not liable for any negligence that the carpenters may have displayed in its construction.

The jury had a right to find under the evidence that the plaintiff had no part whatever in the construction of the runway except to carry material to the vicinity for use by the carpenters.

The doctrine that the master is not liable for an accident the result of the negligence of a fellow servant of the party injured dates back in this country to 1841, when it was first announced by the Supreme Court of South Carolina in Murray v. South Carolina Railroad Co., 1 McMul. 385, 36 Am. Dec. 268. The same doctrine was announced the following year in Massachusetts in Farwell v. Boston & Worcester Railroad Co., 4 Metc. (Mass.) 49, 38 Am. Dec. 339. It was first announced in England in Hutchinson v. York, Newcastle & Berwick Railway Co., 5 Exch. R. 343. See Chicago, Milwaukee & St. Paul Railway Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184, 28 L. Ed. 787. Since these decisions there have been a vast number of cases before the courts upon this subject, and, as a matter of common law, the doctrine may now be said to be as firmly established as any rule known to it.

There is, however, a distinct tendency to the abolition of this doctrine by modern legislatures. This is illustrated by the Employers' Liability Act of April 22, 1908, §§ 1, 2, and 4, c. 149, 35 Stats. 65 (U. S. Comp. St. Supp. 1911, pp. 1322, 1323), and by numerous statutes in the several states abolishing the rule as applied to railroad employés and other statutes abolishing it as to those employed in mines. No such amendment of the common law with reference to buildings like the courthouse in question had been passed in South Dakota at the time of this action, and we will therefore determine this case according to the common law; but admonished, as we are, that the common law on this subject is being greatly modified by legislation, this cannot be regarded as a proper time to extend the doctrine beyond where it has been heretofore applied. The law of fellow servants will be enforced where not repealed just as it is without, however, extending it to classes of cases not heretofore covered by it.

Attention must first be called to the fact that the doctrine as to fellow servants is not based upon any negligence, actual or imputed, of the party injured. It is based essentially upon the doctrine of the assumption of risk. Northern Pacific Railway Co. v. Dixon, 194 U. S. 338, 24 Sup. Ct. 683, 48 L. Ed. 1006; Chicago, Milwaukee & St. Paul Ry. Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184, 28 L. Ed. 787; American Car & Foundry Co. v. Uss, 211 Fed. 862, 128 C. C. A. 240. A striking feature of this doctrine is that the very negligence of one employé which gives a cause of action to a third party against his principal would not give a cause of action by a coemployé against the same principal. Thus the employer has imputed to him as negligence, in a suit brought by a third party, what would not be imputed to him in a suit by a coemployé of the party actually guilty of the negligence. The coemployé thus injured is deemed to have assumed the risk of the injury by his fellow servant.

It is the general duty of the master to exercise ordinary care to furnish an employé a reasonably safe place in which to work and reasonably safe appliances with which to do the work.

We do not deem it necessary to stop to discuss the question whether the runway was a place or an appliance.

In general the duty thus incumbent upon the master is known as a nondelegable one. It is held, however, that the master may furnish reasonably safe materials for use by his servants in the construction of scaffolds and the like necessarily used in the progress of their work, and will not be liable if they or some of them are negligent in the manner in which such conveniences are constructed.

In Kimmer v. Webber, 151 N. Y. 417, 45 N. E. 860, 56 Am. St. Rep. 630, it is said:

"When a gang of masons are engaged in plastering or pointing a room, the construction of proper platforms or places upon which to stand, while doing the work, is one of the details of the business that is generally left to the workmen themselves. The master may, it is true, take this out of their hands and assume to do it himself, and in that case he would be bound to furnish an appliance reasonably safe and suitable for the purpose."

The question here is, in substantially the language of the Court of Appeals of New York, whether the master took the matter of this runway out of the hands of the workmen generally and undertook to do it himself by his carpenters. There was sufficient evidence that he did so to warrant the submission of the question to the jury. Austin Manufacturing Co. v. Johnson, 89 Fed. 677, 32 C. C. A. 309; Chambers v. American Tin Plate Co., 129 Fed. 561, 64 C. C. A. 129; Conner v. Pioneer Fire-Proof Construction Co. (C. C.) 29 Fed. 629; National Refining Co. v. Willis, 143 Fed. 107, 74 C. C. A. 301; Beattie v. Edge Moor Bridge Works (C. C.) 109 Fed. 233; Elliott v. Sawyer, 107 Me. 195, 77 Atl. 782; Coughtry v. Globe Woolen Co., 56 N. Y. 124, 15 Am. Rep. 387; Bartlett-Hayward Co. v. State, 120 Md. 1, 87 Atl. 499; Richards v. Riverside Iron Works, 56 W. Va. 510, 49 S. E. 437; Ehlen v. O'Donnell, 205 Ill. 38, 68 N. E. 766; Chicago & Alton R. Co. v. Maroney, 170 Ill. 520, 48 N. E. 953, 62 Am. St. Rep. 396; Chicago & Alton R. Co. v. Scanlan, 170 Ill. 106, 48 N. E. 826; Wilson v. Monmouth Pottery Co., 150 Ill. App. 477; Sims v. American Steel-Barge Co., 56 Minn. 68, 57 N. W. 322, 45 Am. St. Rep. 451; Combs v. Rountree Construction Co., 205 Mo. 367, 104 S. W. 77; Cadden v. American Steel-Barge Co., 88 Wis. 409, 60 N. W. 800; Wnek v. Superior Shipbuilding Co. (Wis.) 134 N. W. 1053; Henry v. Kaw Boiler Works, 87 Kan. 571, 125 Pac. 67; Allison v. Stivers, 81 Kan. 713, 106 Pac. 996; Kansas City Car & Foundry Co. v. Sawyer, 7 Kan. App. 146, 53 Pac. 90; Penson v. Inland Empire Paper Co., 73 Wash. 338, 132 Pac. 39; Marks v. Hurley Mason Co., 73 Wash. 437, 131 Pac. 1122; McNamara v. MacDonough, 102 Cal. 575, 36 Pac. 941; Texas Co. v. Strange (Tex. Civ. App.) 154 S. W. 327; Texas Co. v. Strange (Tex. Civ. App.) 132 S. W. 370.

It follows that the judgment must be affirmed.