## PARKER v. CUSHMAN.†

(Circuit Court of Appeals, Eighth Circuit.   March 21, 1912.)

### No. 3,558.

1. THEATERS AND SHOWS (§ 6*)—KEEPERS OF WILD ANIMALS—DUTY OF CARE TO PREVENT INJURIES TO PERSONS.

A keeper of wild animals for exhibition is bound to the exercise of a high degree of care to prevent injury by them to persons who attend such exhibitions.

[Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 6; Dec. Dig. § 6.*]

2. THEATERS AND SHOWS (§ 6*)—INJURY BY WILD ANIMALS—DUTY OF CARE TO PREVENT.

Plaintiff went to defendant's wild animal exhibition for the purpose of going home with a friend who was employed as a trainer or exhibitor. At the request of her friend, she was admitted, and while waiting for her friend after the performance a lioness reached through the bars of a cage and seized her by the head, seriously injuring her. *Held*, that she was not a trespasser, but was lawfully in the place with defendant's consent, and that he owed the same degree of care to protect her from injury as to other visitors.

[Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 6; Dec. Dig. § 6.*]

3. EVIDENCE (§ 204*)—ADMISSIONS.

In an action to recover damages for an injury inflicted by a wild animal owned and kept by defendant, statements made by defendant in letters to employés that the injury was due to carelessness were admissible as admissions against interest.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 697, 698; Dec. Dig. § 204.*]

4. THEATERS AND SHOWS (§ 6*)—ACTION FOR INJURIES BY WILD ANIMALS—INSTRUCTIONS.

In such action, an instruction that, if defendant used such care as was ordinarily used by showmen, plaintiff could not recover, was properly refused.

[Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 6; Dec. Dig. § 6.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied June 11, 1912.

5. THEATERS AND SHOWS (§ 6*)—ACTION FOR INJURIES BY WILD ANIMALS—
INSTRUCTIONS.
Instructions asked as to negligence and contributory negligence in an
action to recover damages for injuries inflicted by wild animals kept by
defendant for exhibition purposes, considered, and *held* properly refused.

[Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 6;
Dec. Dig. § 6.*]

In Error to the Circuit Court of the United States for the Western
Division of the Western District of Missouri.

Action at law by Ella May Cushman against Charles W. Parker.
Judgment for plaintiff, and defendant brings error. Affirmed.

James S. Botsford (C. L. Randall and G. W. Hurd, on the brief),
for plaintiff in error.

John L. Wheeler (John C. Nipp, on the brief), for defendant in
error.

Before HOOK and SMITH, Circuit Judges, and MARSHALL,
District Judge.

SMITH, Circuit Judge. There has been maintained for some time
at the southwest corner of Twelfth and Charlotte streets, in Kansas
City, Mo., a place of amusement known as the "Hippodrome." Un-
der a contract with the Hippodrome Amusement Company, dated Oc-
tober 23, 1908, Charles W. Parker installed at the northwest corner
of the building opening on Twelfth street a wild animal show. Along
the west side of this room were cages containing lions, and on the east
side were two lions and other animals. To the west of the animals
on the west side was a passageway connecting with the arena, which
was in the southwest part of the hall. Passing down east of the arena
was a way to the Hippodrome proper.

John D. Appleton, whose stage name was Capt. Cordona, and a
young lady named Ernestine Rose, whose stage name was Miss La
Rose, were employed in connection with the exhibition of lions as
trainers or exhibitors. Miss Rose, while at Kansas City, lived with
the Cushmans and slept with Ella May Cushman.

December 26, 1908, Miss Cushman, wearing on her head a red hat,
went to the animal show at the afternoon performance with a
view to going home with Miss Rose. The latter had left word with
the doorkeeper to admit her, and she was accordingly admitted and
took a seat with Mrs. Appleton and her infant child. This Mrs. Ap-
pleton was the wife of John D. Appleton. They were at first seated
three or four seats back from the front. Mrs. Appleton went out to
talk over the telephone and on her return took her seat in the front
row, where she was joined by Miss Cushman. The show closed, Miss
Rose giving the last performance, and the lions were returned to their
several cages. The Twelfth street entrance was closed, but Miss
Cushman remained waiting for Miss Rose to come back from the
dressing room. While she was waiting, the doorkeeper saw her there,
but made no objection that she had not gone out with the others.

Miss Rose came down from her dressing room, and, as they must go out by way of the Hippodrome proper, Miss Cushman advanced to meet her. A man and woman also met Miss Rose near the east side of the arena and detained her by their conversation, and Miss Cushman was left standing two or three feet from the arena. At some time prior to this, but after the performance closed, Capt. Cordona had turned four lionesses back from their cages into the arena; but whether Miss Cushman knew that fact is a matter of dispute. While she was standing waiting for Miss Rose to conclude her conversation, a lioness reached through the bars of the arena and seized her by the head and seriously lacerated her. She brought suit by her next friend, she being but 15 years old at the time of the accident, for $5,000. She alleged the animals were dangerous and vicious, and Mr. Parker knew this, or would have known it in the exercise of ordinary care; that they were kept in a cage with bars that spread apart, and were weak, unsafe, and insufficient, and without a watchman to warn plaintiff of the danger thereof. Mr. Parker filed a general denial and alleged that Miss Cushman was not present as a guest or patron: that she was injured after the closing of said show; that she well knew the characteristics of the animals in question and went to the place where she received her injuries and assumed the risk of the injuries she complains of and was guilty of contributory negligence. The case was tried to a jury who found for her in the sum of $3,000 upon which judgment was rendered, and Mr. Parker sued out a writ of error. Miss Cushman will be referred to as the plaintiff and Mr. Parker as the defendant.

It has been held that while it is not unlawful for a person to keep wild beasts, though they may be such as are by nature fierce, dangerous, and irreclaimable, it is the duty of those who own and keep them to do it in such a manner as will absolutely prevent the occurrence of an injury to others through such vicious acts of the animals as they are naturally inclined to commit, and such liability exists without notice of the previous misconduct of such animals. In other words, such notice is conclusively presumed from the nature of the animal. 2 Cyc. 367; Congress Spring Co. v. Edgar, 99 U. S. 645, 25 L. Ed. 487; Gooding v. Chutes Co., 155 Cal. 620, 102 Pac. 819, 23 L. R. A. (N. S.) 1071, 18 Ann. Cas. 671; Hays v. Miller, 150 Ala. 621, 43 South. 818, 11 L. R. A. (N. S.) 748, 124 Am. St. Rep. 93; Parsons v. Manser, 119 Iowa, 88, 93 N. W. 86, 62 L. R. A. 132, 97 Am. St. Rep. 283.

It has been held, in actions for injuries from wild beasts and other vicious animals, the fact that the injured party is a trespasser will not preclude a recovery. Marble v. Ross, 124 Mass. 44; Conway v. Grant, 88 Ga. 40, 13 S. E. 803, 14 L. R. A. 196, 30 Am. St. Rep. 145; Melsheimer v. Sullivan, 1 Colo. App. 22, 27 Pac. 17; Loomis v. Terry, 17 Wend. (N. Y.) 496, 31 Am. Dec. 306. It has even been held that contributory negligence generally will not defeat a recovery. Woolf v. Chalker, 31 Conn. 130, 81 Am. Dec. 175; Smith v. Pelah, 2 Str. 1264.

"The keeping of wild animals for many purposes has come to be recognized as proper and useful; they are exhibited through the country with the pub-

lic license and approval; governments and municipal corporations expend large sums in obtaining and providing for them; and the idea of legal wrong in keeping and exhibiting them is never indulged. It seems, therefore, safe to say that the liability of the owner or keeper for any injury done by them to the person or property of others must rest on the doctrine of negligence. A very high degree of care is demanded of those who have them in charge; but if, notwithstanding such care, they are enabled to commit mischief, the case should be referred to the category of accidental injuries, for which a civil action will not lie." Cooley on Torts (3d Ed.) 706.

In Thompson's Commentaries on the Law of Negligence (volume 1, p. 776) this language is quoted with approval, and it is said:

"Latterly, however, there seems to be a disposition upon the part of the authorities to hold the more reasonable rule that all that should be required of the keeper of such animals is that he should take that superior caution to prevent their doing mischief which their propensities in that direction justly demand of him."

A distinction may well be drawn not only between wild and tame or domestic animals, but in dealing with animals feræ naturæ between those that can be domesticated and those that cannot. In dealing with animals feræ naturæ it is not customary to administer so strict a rule as to animals domesticated as with reference to those which cannot be domesticated and so have not been.

[1, 2] It is not necessary to pass upon the exact rule in case of a lioness, as the court below gave the law substantially as laid down by Judge Cooley and Mr. Thompson. It is sufficient to say that, however much the early rule may have been softened, it is everywhere held that the person who exhibits wild animals is liable for a very high degree of care. Miss Rose told the gatekeeper to admit the plaintiff, and he did so. He was clothed at least with apparent authority to determine who were entitled to admission, saw her after the balance of the audience had all gone out, and made no objection. She was not a trespasser, and the court properly so told the jury. She was lawfully present in the animal show at the time she was injured.

On the trial when defendant was on the stand he was asked:

"Q. Now Mr. Parker, I will ask you if you consider it safe and proper management to have the lions in a cage such as this arena was, without any guards to keep the public or the children that came into your shows from coming up within danger of being caught or seized by the lions?"

This was objected to "as incompetent, irrelevant, and immaterial, and as calling for a conclusion of the witness. That is a fact to be found by the jury." This was overruled, and there was then added to the question, "And I mean by guards such as a rope or chains or balusters." Prior to this John Givney had, without objection, testified that there was no guard or rail in front of the arena where Miss Cushman was hurt. Mrs. Cushman, sister-in-law of the plaintiff, had testified that at the point in question the arena projected over the edge of the platform about an inch; there was no protection to any one. You could walk right up and put your head against the bars, and your whole body could have stood right against the bars; no platform at all to keep you from getting right up against the iron cage.

Capt. Cordona had testified that there was no rope, no bars, nothing to tell the public or any person that might be on the east side of the arena when they were so close as to be in danger of being caught or struck by the lions.

In this state of the record it must be noticed that it was not sought to obtain from Mr. Parker any information as to whether there were ropes, bars, or balusters. That there were none was already abundantly shown by numerous witnesses without objection. All that he was asked was whether he thought it safe without them, and he answered he did and was never contradicted on that subject. It is true this was not directly in issue, but the defendant misled the court by saying in his objection, "That is a fact to be found by the jury." It is not asserted that the evidence of the lack of such protection was not admissible on the allegation of the absence of watchmen. The necessity for watchmen was of course dependent upon the nature of the danger in the condition in which the lions were kept. The question having been answered in favor of Mr. Parker and his evidence not rebutted, it does not appear there was any prejudice from the ruling.

[3] Exception was taken to the admission in evidence of two letters from Mr. Parker to C. W. Hardin, his manager at Kansas City, in one of which in referring to the accident he said, "It has been caused by carelessness," and in the other he asserted, "There is no excuse for it but bad management, very bad management." Clearly there was no error in admitting these letters.

In the first instruction asked it was sought to have the jury told that, as Miss Cushman had not paid for her admission, the management was only liable for damages willfully inflicted upon her. She was present with the permission of Mr. Parker, given through his ticket agent, and, whatever her status was, the defendant, having admitted her, was bound to a high degree of care for her safety, and the instruction was properly refused.

In the second instruction asked it was sought to have the jury charged that if plaintiff did not exercise due care, and voluntarily placed herself so near the arena in which the animals were confined as to enable one of said animals to inflict upon her the injury of which she complains, she cannot recover. The court modified this to read that if plaintiff knowingly, voluntarily, and unnecessarily, and without the evidence of such care, placed herself so near the arena as to enable one of said animals to inflict upon her the injury complained of, she cannot recover. Either instruction was correct, and there was no error in the correction made by the court.

[4] In the third, fourth, and fifth instructions asked the jury were sought to be instructed in substance that, if the arena was of a kind used by ordinarily prudent showmen, plaintiff could not recover. These were all erroneous. The test is not what ordinarily prudent showmen used. They might all be negligent. In Hamilton v. Des Moines Valley Railroad Co., 36 Iowa, 31, a recovery was sought for injuries from projecting timbers, and it was sought to instruct the jury that if they were loaded as was usual and customary upon de-

fendant's and all other railroads plaintiff could not recover. The court very wisely said:

"The instruction was properly refused for the obvious reason that habits of negligence on the part of defendant or other railroads will not relieve them from the consequence of their negligent acts. It can hardly be insisted that, if one is 'usually and commonly' negligent, he will escape liability for his acts, and that the usual and common delinquencies of others will have the effect to excuse him. If, because an act is usual and common, it ceases to be negligent, it follows that the sure way of escaping liability for injuries to persons and property, in cases of this character, would be to adopt a certain and uniform system of common negligence."

The question was not what showmen, or even prudent showmen, used, but what was sufficient in the judgment of the jury to protect the public against these highly dangerous animals?

[5] In the sixth instruction asked it was sought to tell the jury that plaintiff by going to the show assumed all such risks as might result from her going there. This was flagrantly erroneous and was properly refused.

The seventh instruction asked announced the rule that, if the iron bars of the arena had sufficient space between so that the lions could be seen through them, plaintiff could not recover. It was not only a question of whether the lions could be seen, but as to whether the plaintiff had reason to apprehend that the bars were either wide enough apart or could be so spread that a lioness could reach her at the point where she was and injure her.

The eighth, ninth, and tenth instructions asked were all substantially to the effect that, as she was not a paid patron and was not there to see the show, if she voluntarily left her place and went to where the lions could reach her, she could not recover. The only difference in these instructions were variations as to whether the lions were in the arena, whether she knew that fact, and whether she would have known the lions were there in the exercise of due care. They were all incorrect and were properly refused.

Complaint is made that the court failed to instruct as to the assumption of risk. While this doctrine is ordinarily invoked between master and servant, it must be conceded, however, that it may apply between others. The court did tell the jury:

"Respecting the assumption of risk, gentlemen of the jury, you will recall what the court said with respect to contributory negligence and what is meant by the assumption of risk is that when a party so far forgets the care, the ordinary care, required of him that he plunges into danger without due care for his safety, that he then is held to assume the risk of what he does."

Counsel then excepted on the ground that the assumption of risk is different from and separate from the issue of contributory negligence, which the court at once conceded. The instructions as given were correct as applied to the facts of this case, and no more specific instruction was presented or in any formal way asked.

Complaint is made of the failure to instruct the jury to find for defendant, but under the facts as stated the defendant was not entitled to such charge.

No error has been pointed out, and the case is affirmed.