## AMERICAN CAR & FOUNDRY CO. v. USS.

(Circuit Court of Appeals, Eighth Circuit. February 17, 1914.)

No. 3929.

1. MASTER AND SERVANT (§ 264*)—ACTIONS FOR INJURIES—PLEADING—CONTRIBUTORY NEGLIGENCE.

A defendant which, in pleading contributory negligence, specifically set forth in what such negligence consisted was bound thereby.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 861–876; Dec. Dig. § 264.*]

2. MASTER AND SERVANT (§ 153*)—LIABILITY FOR INJURIES—CONTRIBUTORY NEGLIGENCE.

An employé, fresh from Russian Poland, would not, in the absence of any instruction after three months' service, be presumed to know that, in loading iron on a truck, five standards should have been used on each side, though there were five holes for the standards, that a rolled plate about eight inches high should have been used against the standards instead of a piece of sheet iron three feet high, or that in piling the iron it must be held back from the side of the truck to avoid bulging; these not being matters of common knowledge.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 314–317; Dec. Dig. § 153.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3.** MASTER AND SERVANT (§ 159*)—LIABILITY FOR INJURIES—NEGLIGENCE OF FELLOW SERVANT.

The law with reference to fellow servants is a part of the law with reference to the assumption of risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 318–325; Dec. Dig. § 159.*]

**4.** MASTER AND SERVANT (§ 201*)—LIABILITY FOR INJURIES—NEGLIGENCE OF FELLOW SERVANT.

A master is liable where his negligence, in failing to provide and maintain a safe place, contributes to the injury of an employé, notwithstanding the concurring negligence of a fellow servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 515–534; Dec. Dig. § 201.*

Concurrent negligence of master and fellow servant, see note to Maupin v. Texas & P. Ry. Co., 40 C. C. A. 236.]

**5.** MASTER AND SERVANT (§ 291*)—ACTIONS FOR INJURIES—INSTRUCTIONS—CONFORMITY TO PLEADINGS.

A defendant, which specifically pleaded what it claimed constituted contributory negligence, was not entitled to an instruction that, if any act of plaintiff contributed to cause the injury, he could not recover.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1133, 1134, 1136–1146; Dec. Dig. § 291.*]

**6.** MASTER AND SERVANT (§ 296*)—ACTIONS FOR INJURIES—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE.

In an employe's action for injuries caused by the sides of a truck giving way and permitting iron to fall upon him, an instruction that, if any act of his in loading the truck contributed to the injury, he could not recover was properly refused, as it did not require that such act should be negligent.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1180–1194; Dec. Dig. § 296.*]

**7.** MASTER AND SERVANT (§ 294*)—ACTIONS FOR INJURIES—INSTRUCTIONS—NEGLIGENCE OF FELLOW SERVANT.

In an employé's action for injuries caused by iron rolling upon him from a truck, an instruction that if a fellow servant put two standards in place of five on the side of the truck, and if this caused the accident, plaintiff could not recover was properly refused, where the accident might have been caused by this in concurrence with the employer's negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1157, 1161, 1162–1167; Dec. Dig. § 294.*]

**8.** MASTER AND SERVANT (§ 105*)—LIABILITY FOR INJURIES—DEFECTIVE APPLIANCES.

That a turntable in an employer's plant was constructed in all respects as similar turntables used for the same purpose were usually and customarily constructed did not relieve it of liability for injuries due to defective construction.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 185–191; Dec. Dig. § 105.*]

**9.** MASTER AND SERVANT (§ 293*)—ACTIONS FOR INJURIES—INSTRUCTIONS.

In an employé's action for injuries claimed to have been caused by a jolt when a loaded truck was pushed from a track upon a turntable, where it was to be diverted to another track, an instruction that the absence of rails on the turntable could not justify a' recovery was properly refused, as, if there were no rails, it was more important that the depression of the turntable below the rails should not be substantially greater than the width of the flanges on the wheels of the truck, and the instruction would therefore have misled the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1156, 1158–1160; Dec. Dig. § 293.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

10. MASTER AND SERVANT (§ 293*)—ACTIONS FOR INJURIES—INSTRUCTIONS.
      In an employé's action for injuries claimed to be due to a jolt in push-
   ing a loaded truck from a track upon a turntable, an instruction that
   the question was whether the turntable in its construction and make was
   so defective that, when the car went upon it, it fell lower, and that the
   jolt or jar precipitated the iron on plaintiff, and that it was for the jury
   to decide whether the turntable was defectively constructed, and whether,
   in running a heavily loaded truck upon it, it was liable to and did create
   a jar causing the iron to slip, did not, as claimed, authorize a finding that
   the turntable was defective in any particular.
      [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
   1148–1156, 1158–1160; Dec. Dig. § 293.*]

   In Error to the District Court of the United States for the Eastern
District of Missouri; David P. Dyer, Judge.

   Action by William Uss against the American Car & Foundry Com-
pany. Judgment for plaintiff, and defendant brings error. Affirmed.

   William R. Gentry, of St. Louis, Mo. (M. F. Watts, Edwin W. Lee,
and G. A. Orth, all of St. Louis, Mo., on the brief), for plaintiff in
error.

   P. H. Cullen, of St. Louis, Mo. (William R. Orthwein, Thomas T.
Fauntleroy, and Shepard Barclay, all of St. Louis, Mo., on the brief),
for defendant in error.

   Before HOOK and SMITH, Circuit Judges, and AMIDON, Dis-
trict Judge.

   SMITH, Circuit Judge. This was a suit for personal injuries. The
defendant in error, William Uss, hereafter called the plaintiff, was born
in Russian Poland, and was at the time of the trial 23 years old. When
he came to this country is not shown, but he had to testify through an
interpreter at the trial, as he spoke Polish. He had worked for some
five months as a common laborer for the plaintiff in error, the Amer-
ican Car & Foundry Company, hereafter called the defendant. At
first he worked in the defendant's yards, but at the end of a couple of
months he was transferred to the duty hereafter described. He
worked in his new place for about three months, until the time of the
accident on account of which this suit is brought. The accident took
place at about 9 or 10 o'clock at night. A man named Tanner was en-
gaged in cutting iron 5 by 1⅛ inches and 30 feet long into shorter
lengths, the minimum being about 2 feet and 8 inches long, with what
are called shears. The plaintiff and a coemployé, Koza, were taking
the iron as it came very hot from the shears and placing it upon a car
or truck upon a track, and this car would then be run about 15 feet
to a turntable, where it was diverted to another track and transferred
presumptively to a place of further manufacture. Michael D. Conroy
was the defendant's superintendent in charge of all the defendant's
work in the place in question. He was on duty in the daytime. At
night Charles Sindel was acting as superintendent under Conroy. Con-
roy swears that the shearman, Tanner, had no authority to employ or
discharge employés, while plaintiff swears he had such authority. The
truck in question had five holes on a side for standards, but it does

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

not appear that it ever was explained to plaintiff how many standards should be used for any given load, nor does it appear how many were usually used. Koza put up only two standards about three feet apart and placed a piece of sheet iron against them, and he and plaintiff then went to work piling the pieces of iron which had been cut by the shearman against this sheet iron. They had, either prior to any loading or at least prior to the completion of it, placed two standards upon the other side of the car. They then started with the car, drawn by a mule, for the turntable. As they drew near the latter, the mule became weary, or for some reason balked, and under direction of Tanner the men pushed the car toward the turntable, and the plaintiff went along beside the car with two blocks and put one in front of the car to prevent its passing off of the turntable, and was stooping to put the other under the rear to prevent the car from receding, when one of the standards broke or bent, and a large portion of the hot iron fell off the car onto him. . At the time the front wheels were on the turntable, but not the rear wheels. It required some minutes to remove the iron from him, and he was then found badly injured from the blow and from burning. In his petition numerous grounds of negligence are alleged, but it is sufficient to say that he alleged that the defendant negligently and carelessly maintained said turntable below the level of the rails, so that the wheels of conveyances would strike said turntable and thereby jolt conveyances running on said track, and that, when said wheels and said conveyances reached said turntable, the said conveyance was abruptly jolted by the wheels thereof dropping from the straight track to the turntable, and the jolt caused the sides supporting said pieces of hot metal to give away, to the injury of the plaintiff. After some formal admissions, the answer denies the balance of the allegations of the petition, and continues: Further answering this defendant says that whatever injuries were sustained by the plaintiff on the occasion referred to in his petition were caused by his own negligence directly contributing thereto in this, to wit: That the plaintiff himself assisted in loading the truck or vehicle referred to in plaintiff's petition on said occasion, and negligently overloaded the same, and, while said truck was being moved, plaintiff negligently thrust a block of wood in front of one of the wheels thereof before said vehicle had stopped, and thereby caused a sudden strain to be thrown upon said vehicle and the load of iron thereon, which directly contributed to cause said load of iron to fall upon the plaintiff. Defendant also pleaded assumption of risk.

Upon the argument the company claimed the accident was due to the fact that only two standards were used in place of five; to the using of the sheet iron nearly three feet high against the standards instead of a rolled plate about eight inches high; and to the fact that the iron was piled too far over toward the side that broke, so that it bulged the standards out, while the plaintiff claims that the accident was due to the defective condition of the turntable.

[1] It must be borne in mind that the only allegations of contributory negligence are that the plaintiff assisted in loading the truck or vehicle referred to and negligently overloaded the same, and that, while

said truck was being moved, the plaintiff negligently thrust a block of wood in front of one of the wheels before said vehicle had stopped, and thereby caused a sudden strain to be thrown upon said vehicle and the load of iron thereon, which directly contributed to the injury.

The defendant, having specifically set forth in what the contributory negligence consisted, is of course bound thereby. There is no evidence that the car was overloaded. It had a capacity of 20,000 pounds, and there is no evidence that it was loaded to that capacity. Nor is there any evidence that it was negligent to place the first block before the car stopped. It quite satisfactorily appears that this was the method of stopping the car. There is therefore no evidence of the contributory negligence alleged. There is no mention in the answer as to contributory negligence in the use of two standards in place of five; to the use of a sheet iron wall in place of a rolled plate; and to the fact that the iron was piled too far over on the side on which it fell. If in fact any of these things were the cause of the accident, they would be material, but not on the question of contributory negligence in the form in which the answer was drawn.

[2] It does not appear that plaintiff had ever been instructed as to how such a car should be loaded. The mere presence of five holes in the side of the car would not necessarily admonish him that they should all be used at all times. If long pieces were to be hauled, the leverage, upon the slightest careening of the load, would have been tremendous, and, when they brought these 30-foot pieces to the shearman, it might be necessary to have five standards, while with short pieces, like those in transit at the time of the accident, two might be ample. The sheet iron used against the standards was manifestly provided by the company for some purpose, and there is nothing to show when it and when the rolled plate should be used, much less that such information had been communicated to the workmen, nor is there any evidence that they had ever been warned that in piling iron it must be held back from the side of the car to avoid its bulging therefrom. There were none of these matters common knowledge, and the plaintiff, who was a young man fresh from Russian Poland, is not to be presumed to have known after three months' service what we do not know; but the two standards were inserted three feet apart and the sheet iron placed against them by a coemployé of the plaintiff.

[3] The law with reference to fellow servants never held that the servant had imputed to him the negligence of his coemployé, but that it was not imputed to the master, and he was consequently not liable if the accident took place to one of his employés through the negligence of his fellow servant. The law with reference to fellow servants is a part of the law with reference to the assumption of risk. Northern Pacific Ry. Co. v. Dixon, 194 U. S. 338, 24 Sup. Ct. 683, 48 L. Ed. 1006. If the plaintiff was claiming because of the few standards or the use of the sheet iron instead of the rolled plate, the defense that Koza, who placed them on the truck, was a fellow servant would be complete.

[4] It was for the jury to say from the evidence what caused the accident. It said it was not the use of two standards instead of five, in the use of the sheet iron wall instead of the rolled plate, in the fact, although it was piled far over, that it would make the standards bulge,

but it was the defective condition of the turntable which caused the accident. It should be borne in mind, however, that even if this accident was in fact due to the negligence of Koza, plaintiff's colaborer, it does not follow that the defendant was not liable if the defendant negligently maintained a turntable out of proper condition, and such negligence in part caused the injury. It has been twice laid down by the Supreme Court that, if the negligence of the master in failing to provide and maintain a safe place contributes to the injury of an employé, the master is liable, notwithstanding the concurring negligence of a fellow servant of a party injured. Deserant v. Cerillos Coal Railroad Co., 178 U. S. 409, 20 Sup. Ct. 967, 44 L. Ed. 1127; Kreigh v. Westinghouse & Co., 214 U. S. 249, 29 Sup. Ct. 619, 53 L. Ed. 984.

We come now to the evidence as to the turntable. It was only five feet across and swung on a pivot in the center with four wheels or rollers under the outer side. There was no track upon the turntable. It stood necessarily somewhat below the level of the tracks approaching it and extending from it, and it was clearly necessary, if such a turntable was used, that it should be at least as much below the surface of the rails as the width of the flanges on the wheels, or they would not ride onto it with ease, otherwise the flanges on the wheels would have to climb up onto the turntable; but the evidence shows that it was not only this far below the level but there was a play allowed in the turntable, so that, when the car was in the center, it would swing on the pivot without resting or binding on the wheels or rollers. This was to avoid friction in turning the table. This was undoubtedly desirable, and the substantial question before the jury was whether the room allowed for this play was excessive. That is, was it more than reasonably necessary, and did it result in the side from which the car was coming going down upon the entry of the car to so jolt it as to endanger the safety of the load? The question is therefore one of whether there was negligence in the condition of the turntable. It was constructed so as to give down at the side where the car entered upon it from one-half of an inch to one inch and a half. Ordinarily when the car came to the turntable it was pulled on by a mule, but in this case it was started on by hand, and when the front wheels struck the near side of the turntable it went down, resulting in a very considerable jolt and the falling of the load. So far as appears, this was the first time that the plaintiff ever blocked the wheels when the car was run onto the turntable by hand. It is highly probable that, if the mule had hauled it instead of the men pushed it, it would have run on without perceptible jar or jolt. Whatever may be the fact in that connection, it appears that it never had been so jarred or jolted within plaintiff's knowledge as it was on the occasion of the accident. There was ample evidence from which the jury could rightfully find that, while it was necessary for a turntable to have some play, it had far too much, and that this caused the accident. If the failure of the defendant to exercise ordinary care to furnish safe appliances with which to work caused the accident, the plaintiff could recover, notwithstanding any negligence of his coemployé. The request for a peremptory instruction was therefore properly denied.

[5, 6] The defendant asked the court to instruct the jury that, if any act of plaintiff in loading the truck contributed to cause the injury, he could not recover. When a defendant has specifically pleaded what it claims constitutes contributory negligence, it is not entitled to such an instruction; but, not only this, the instruction did not require that any act of the plaintiff should be negligent. Of course, if the truck had not been loaded at all, no such accident could have happened. This instruction was properly refused.

[7] The third instruction asked that if Koza put two standards in place of five, and that this caused the accident, plaintiff could not recover. This instruction ignored the fact that there may be several co-operating causes of an accident, and it did not limit its effect to a case where the negligence of Koza was the sole cause of the injury. If Koza negligently put up two standards and should have put up five, and this caused the accident in concurrence with the defendant's negligence in the turntable, and but for the negligence of both the accident could not have happened, all of the elements of the instruction would be present, and yet plaintiff could recover.

The defendant sought to have the jury instructed that Tanner and plaintiff were fellow servants. That was a wholly immaterial matter, as the case was finally submitted to the jury.

[8] In another instruction asked it was sought to instruct the jury that if the turntable was constructed in all respects as similar turntables used for the same purpose are usually and customarily constructed the defendant was not liable.

It was expressly held by this court in Parker v. Cushman, 195 Fed. 715, 117 C. C. A. 71, that instructions less favorable to the defendant should not have been given at his request. That opinion was concurred in by Hook and Smith, Circuit Judges, and Marshall, District Judge. We do not say that that decision is necessarily in conflict with Canadian Northern Ry. Co. v. Senske, 201 Fed. 637, 120 C. C. A. 65, but this court, as now constituted, adheres to the decision in 195 Fed. 715, 117 C. C. A. 71, and the court below was right in rejecting this request. Wabash Ry. Co. v. McDaniels, 107 U. S. 454, 2 Sup. Ct. 932, 27 L. Ed. 605; Texas & Pacific Ry. Co. v. Behymer, 189 U. S. 468, 23 Sup. Ct. 622, 47 L. Ed. 905.

[9] Complaint is made that the court refused a request to instruct the jury that the absence of rails on the turntable could not entitle the plaintiff to recover. We do not think rails were necessary if the turntable was constructed so that it was not substantially more below the rails than the width of the flanges on the wheels; but the question was whether the turntable was so constructed that it necessarily created a serious jolt or jar when a loaded car passed on it when moved by hand power. It was the more important, if there were to be no rails, that the depression of the turntable below the rails should not be substantially greater than the width of the flanges on the wheels. It is a matter of common knowledge that the flange on a wheel is not equal to the height of the rail. This case simply required that the turntable be set higher with than without rails. The instruction asked would therefore have misled the jury.

[10] Complaint is made that the charge of the court was too broad in that, as, construed, it permitted the jury to find the turntable was defective in any particular whatsoever. The particular parts of the charge referred to are as follows:

"The question at last is as to whether this turntable, its construction and its make, was so defective that, when the car loaded with iron went upon it, it fell lower, and that the jolt or jar of that car precipitated the iron upon this man. * * * If you find that the turntable was defectively constructed, and that, in running a heavily loaded car onto it, it was liable to create a jar, and that in this case it did create a jar that caused this iron to slip onto this man, then that is the question you are to decide."

We think the construction that these instructions permitted the jury to find any defect whatever is strained. These portions of the charge and others fairly submitted the case to the jury.

We find no error, and the judgment is affirmed.